NEWS AND OBSERVER PUBLISHING COMPANY v. STATE OF NORTH CAROLINA, *EX REL.* HAYWOOD STARLING, DIRECTOR OF THE STATE BUREAU OF INVESTIGATION

THE COUNTY OF WAKE v. STATE OF NORTH CAROLINA, *EX REL.* HAYWOOD STARLING, DIRECTOR OF THE STATE BUREAU OF INVESTIGATION, IN HIS OFFICIAL CAPACITY

DR. JOHN A. MURPHY v. STATE OF NORTH CAROLINA, *EX REL.* HAYWOOD STARLING, DIRECTOR OF THE STATE BUREAU OF INVESTIGATION, IN HIS OFFICIAL CAPACITY

No. 1PA84

(Filed 6 November 1984)

### 1. Bills of Discovery § 5; Public Records § 1— public access to S.B.I. records— when permitted

The statute providing that S.B.I. records and evidence are not public records but "may be made available to the public only upon an order of a court of competent jurisdiction," G.S. 114-15, permits a member of the public to obtain access to S.B.I. records only when such person is entitled to access under one of the procedures already provided by law for discovery in civil or criminal cases. The opinion in *State v. Goldberg*, 261 N.C. 181 (1964) is disapproved to the extent that it can be read as implying that trial courts are given unfettered discretion by G.S. 114-15 to make S.B.I. records and evidence public.

### 2. Public Records § 1— S.B.I. report—no access by newspaper publisher

A newspaper publishing company was not entitled to access to an S.B.I. report on a criminal investigation of a former school superintendent where the publishing company did not appear before the court as a defendant in a criminal case, and where the publishing company did not seek the S.B.I. report on the ground that it was reasonably calculated to lead to the discovery of admissible evidence to be used in the trial of any pending action but sought access only due to its desire to know and publish the contents of the report.

### 3. Constitutional Law § 18; Public Records § 1— access to S.B.I. report—no constitutional right

Members of the public do not have a First Amendment right of access to an S.B.I. report on the criminal investigation of a former school superintendent.

ON discretionary review of a decision by the Court of Appeals, 65 N.C. App. 576, 309 S.E. 2d 731 (1983), affirming an order entered September 24, 1983 by *Judge James H. Pou Bailey* in

Superior Court, WAKE County. Heard in the Supreme Court April 10, 1984.

*Sanford, Adams, McCullough & Beard, by H. Hugh Stevens, Jr., and Nancy Bentson Essex, for the plaintiff appellee, The News and Observer Publishing Company.*

*Rufus L. Edmisten, Attorney General, by Andrew A. Vanore, Jr., Senior Deputy Attorney General, J. Michael Carpenter, Assistant Attorney General, and Daniel C. Higgins, Assistant Attorney General, for the State.*

MITCHELL, Justice.

[1] The issues raised by this appeal concern the circumstances under which members of the public are to be given access to records of the State Bureau of Investigation [hereinafter "S.B.I."]. Our analysis of these issues rests upon our interpretation of N.C.G.S. 114-15 which provides that S.B.I. records and evidence are not public records but may be made available to the public "only upon an order of a court of competent jurisdiction." Because we believe that the legislature intended the statute to be a limitation upon access to S.B.I. records, we reverse the decision of the Court of Appeals which affirmed the order of the trial court making S.B.I. records in the present case public. We hold that access to S.B.I. records by members of the public may be obtained only under one of the procedures already provided by law for discovery in civil or criminal cases.

The facts of this case are not in serious dispute. On March 4, 1981, The Honorable Randolph Riley, District Attorney for the Tenth Prosecutorial District, requested that the S.B.I. conduct a criminal investigation into the conduct and activities of Dr. John A. Murphy, covering the entire period during which Murphy served as Superintendent of The Wake County Schools. After a fourteen month investigation, an S.B.I. report containing information gathered during the criminal investigation was prepared and transmitted to District Attorney Riley on June 17, 1982. On October 24, 1982, Riley announced that he had reviewed the report and found no grounds for prosecution.

The petitioner-appellee, The News and Observer Publishing Company [hereinafter "News and Observer"] publishes two daily.

newspapers of general circulation. On August 26, 1982, the News and Observer petitioned the Superior Court, Wake County, under N.C.G.S. 114-15 for an order directing Haywood Starling, Director of the S.B.I., to release the S.B.I. records of the criminal investigation of Murphy. Similar petitions were filed on behalf of the County Commissioners of Wake County and on behalf of Murphy.

After a consolidated hearing on the petitions, the trial court entered an order directing that the S.B.I. records be made public. The order included findings stating that the public interest in having the information sought outweighed the interest of the S.B.I. in retaining its confidentiality. The State gave oral notice of appeal and requested a stay of the order pending appeal. The trial court granted the motion for stay.

The Court of Appeals affirmed the order of the trial court making the S.B.I. records public. The State petitioned this Court for a writ of supersedeas and for discretionary review. We allowed the petition for the writ of supersedeas on January 4, 1984 and the petition for discretionary review on February 2, 1984. Although the County Commissioners joined the News and Observer in appealing to the Court of Appeals, the County did not file a brief or otherwise participate in the appeal to this Court. Dr. Murphy has participated in neither appeal.

By several assignments of error, the State contends that the trial court erred in ordering that the S.B.I. records be made public. The State also argues that the opinion of the Court of Appeals sets a dangerous precedent which will severely hamper the ability of the State to investigate violations of criminal law. The News and Observer, on the other hand, contends that the Court of Appeals was correct in its holding that the decision to order disclosure of S.B.I. records was a matter within the trial court's discretion and could be reversed only upon a showing of abuse of discretion.

Under our statutory scheme, access to documents, papers and files in the possession of public agencies generally is controlled by the Public Records Act, N.C.G.S. 132-1 to 132-9, and by applicable rules of criminal and civil discovery. The Public Records Act defines "public records" as all documents, papers, letters, maps, books and other documentary material "made or

received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions." N.C.G.S. 132-1. Such public records must be open for public inspection at reasonable times. N.C.G.S. 132-6.

Records of the S.B.I., however, are expressly exempted from classification as public records by N.C.G.S. 114-15, which states in pertinent part the following:

> All records and evidence collected and compiled by the Director of the Bureau and his assistants shall not be considered public records within the meaning of G.S. 132-1, and following, of the General Statutes of North Carolina and may be made available to the public only upon an order of a court of competent jurisdiction.

We must decide in the present case what the legislature intended in allowing S.B.I. records to be "made available to the public only upon an order of a court of competent jurisdiction." In determining the legislative intent, we must first review common law and constitutional provisions for access to such records. This is so because common law and constitutional underpinnings of the right to access to such records are pertinent to the issue of legislative intent. *See State v. Emery*, 224 N.C. 581, 31 S.E. 2d 858 (1944).

At common law neither criminal nor civil litigants had any absolute rights to pretrial discovery. In a number of cases this Court has clearly stated that no right of discovery in criminal cases was recognized at common law. *E.g., State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977); *State v. Hoffman*, 281 N.C. 727, 190 S.E. 2d 842 (1972); *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334, *cert. denied*, 377 U.S. 978 (1964). The Supreme Court of the United States has recognized, however, that the Constitution of the United States provides *the defendant in a criminal case* with rights to obtain certain types of evidence from the prosecution before trial. *See generally, e.g., California v. Trombetta*, --- U.S. ---, 104 S.Ct. 2528 (1984); *United States v. Agurs*, 427 U.S. 97 (1976); *Brady v. Maryland*, 373 U.S. 83 (1963). Since no defendant in a criminal case is involved here, we need not examine further the rights of criminal defendants to access to documents in the hands of the State.

In civil actions the common law provided no means by which a party could be compelled to produce documents in his possession as a part of discovery. 27 C.J.S. *Discovery* § 1 (1959). Equity provided the remedy of discovery. *Id. See Vann v. Lawrence,* 111 N.C. 32, 15 S.E. 1031 (1892); *Coates Brothers v. Wilkes,* 92 N.C. 376, 386 (1885). Such discovery was allowed only when it was incidental to other relief. Courts of equity never, however, granted discovery merely to gratify curiosity. 27 C.J.S. Discovery § 2 (1959). At common law, information given to the government concerning alleged violations of criminal law was treated as a type of state secret to which the public was not entitled to have access. 27 C.J.S. *Discovery* § 5 (1959).

Statutes have now replaced the former equitable rights of discovery and bills of discovery in equity have been abolished. *Beck v. Wilkins Ricks Co.,* 186 N.C. 210, 119 S.E. 235 (1923). Civil discovery is now governed by statute. The Supreme Court of the United States has indicated that rules governing discovery in civil cases are a matter of legislative grace. *Seattle Times Co. v. Rhinehart,* --- U.S. ---, 104 S.Ct. 2199 (1984). Civil litigants then enjoy no absolute right to discovery of documents in the hands of others.

Another means which developed for gaining access to documents derived from the statutory and common law provisions for disclosure of public documents. At common law citizens had a right to inspect public documents, but the right was subject to numerous limitations. 76 C.J.S. *Records* § 35 (1952). The right was not absolute, and courts often held that it was limited to persons having a special interest. No right of inspection of public documents existed when inspection was sought merely to satisfy curiosity. *Id.*

In 1887 this Court recognized the public's right of access to public documents in a case involving inspection of records in the office of a register of deeds. We stated that all persons have the right to inspect public records without charge, but that a person who has no interest in the records "for the prosecution of his business" may not take copies without paying a fee. *Newton v. Fisher,* 98 N.C. 20, 23, 3 S.E. 822, 824 (1887).

Even in jurisdictions recognizing the right of members of the public to inspect public documents, however, an exception pre-

venting disclosure of police records generally has been recognized. *See, e.g., Whittle v. Munshower,* 221 Md. 258, 261, 155 A. 2d 670, 671-72 (1959), *cert. denied,* 362 U.S. 981 (1960); *Lee v. Beach Publishing Co.,* 127 Fla. 600, 604, 173 So. 440, 442 (1937); *People v. Wilkins,* 135 Cal. App. 2d 371, 377-78, 287 P. 2d 555, 559 (1955). Absent a statute requiring disclosure, police records generally are held confidential. *See* 66 Am. Jur. 2d, *Records and Recording Laws,* § 27 (1973). Reports based on criminal investigations have been held not to be subject to disclosure because they are often based on hearsay and for reasons of confidentiality. 66 Am. Jur. 2d, *Records and Recording Laws,* § 29 (1973); *see generally* Annot., 82 A.L.R. 3d 19 (1978).

As can be seen from the foregoing, neither parties to civil or criminal cases nor members of the public seeking access to public documents enjoyed any absolute common law right to the discovery of documents or to access to public records. Any such rights were limited and were always subject to exceptions for records concerning police investigations.

Discovery in criminal and civil cases and access to public records are now governed in this State by statute. *See, e.g.,* N.C.G.S. 15A-901 to 910 (criminal discovery); N.C.G.S. 1A-1, Rules 26 to 37 (civil discovery); N.C.G.S. 132-1 to 132-9 (access to public records). When the General Assembly as the policy making agency of our government legislates with respect to the subject matter of any common law rule, the statute supplants the common law and becomes the law of the State. *McMichael v. Proctor,* 243 N.C. 479, 91 S.E. 2d 231 (1956). Therefore, rights of access to S.B.I. records are no longer governed by common law principles but, instead, fall within the dictates of the applicable statutes.

The common law right of access to public records was made statutory in this State for the first time in 1935. 1935 N.C. Sess. Laws ch. 265, § 1. Although this Court has not had occasion to interpret the Public Records Act, N.C.G.S. 132-1 to 132-9, it is clear that the legislature intended to provide that, as a general rule, the public would have liberal access to public records. *Advance Publications v. City of Elizabeth City,* 53 N.C. App. 504, 281 S.E. 2d 69 (1981). Nevertheless, in N.C.G.S. 114-15 the General Assembly specifically provided that S.B.I. records and evidence "shall not be considered public records within the meaning of G.S.

132-1 and following." When as here the language of a statute is clear and unambiguous, there is no room for judicial construction, and courts must give the statute its plain meaning. *In re Banks*, 295 N.C. 236, 244 S.E. 2d 386 (1978). It is clear that S.B.I. records are not public records and that access to them is not available under N.C.G.S. 132-1 to 132-9, the Public Records Act. Instead, access to S.B.I. records is controlled entirely by N.C.G.S. 114-15.

We turn then to the proper interpretation to be given N.C. G.S. 114-15. In doing so we note that every statute is to be interpreted in light of the Constitution and laws as they were understood at the time of enactment. *State v. Emery*, 224 N.C. 581, 31 S.E. 2d 858 (1944). That part of N.C.G.S. 114-15 pertinent to the confidentiality of S.B.I. records was enacted in 1947. 1947 N.C. Sess. Laws ch. 280, § 1. Since the right of public access to public records had been granted by statute in 1935, we construe N.C.G.S. 114-15 as intended to limit the broad scope of the earlier enacted Public Records Act. In determining the extent to which the legislature intended N.C.G.S. 114-15 to limit access to S.B.I. records, we must review the generally recognized reasons for prohibiting public access to such records.

Courts have given almost universal recognition to certain reasons for excluding police and investigative records from the operation of statutory rights of public access. Reports based on criminal investigations are often exempt from disclosure because they are based on hearsay and consist largely of the opinions and conclusions of the investigators. *See Mathews v. Pyle*, 75 Ariz. 76, 251 P. 2d 893 (1952). The need for protection of confidentiality of government informants and the protection of investigative techniques used by law enforcement agencies also have been generally accepted as justifying prohibitions on disclosure of police and investigative records. *See Bougas v. Chief of Police*, 371 Mass. 59, 354 N.E. 2d 872 (1976). As stated in *Aspin v. Department of Defense*, 491 F. 2d 24 (D.C. Cir. 1973):

> It is clear that if investigatory files were made public subsequent to the termination of enforcement proceedings, the ability of any investigatory body to conduct future investigations would be seriously impaired. Few persons would respond candidly to investigators if they feared that their remarks would become public record after the proceedings.

Further, the investigative techniques of the investigating body would be disclosed to the general public.

491 F. 2d at 30; *see also Frankel v. SEC*, 460 F. 2d 813 (2d Cir.), *cert. denied*, 409 U.S. 889 (1972). An equally important reason for prohibiting access to police and investigative reports arises from recognition of the rights of privacy of individuals mentioned or accused of wrongdoing in unverified or unverifiable hearsay statements of others included in such reports. *In re Investigation by Attorney General*, 30 N.C. App. 585, 227 S.E. 2d 645 (1976); *see also Houston Chronicle Publishing Co. v. Houston*, 531 S.W. 2d 177 (Tex. Civ. App. 1975).

We assume that the legislature considered the foregoing reasons for denying access to police records, as well as the common law and statutory history concerning such access, when it enacted the statute declaring S.B.I. records not to be public and, thereby, exempted them from disclosure under the Public Records Act. We find further support for our conclusion that, in passing N.C.G.S. 114-15, the legislature intended to limit access to S.B.I. records to those procedures already available at law from the fact that even District Attorneys were given only very limited access to such records. The District Attorneys who have the constitutional and statutory duty to prosecute criminal cases in this State have a right of access to S.B.I. records, but only if such records concern persons or investigations in their respective districts. N.C.G.S. 114-15. Therefore, we hold that N.C.G.S. 114-15 grants no new right whatsoever to access to S.B.I. records. The statute makes it clear that S.B.I. records are not public records, and access to them by parties, other than District Attorneys, may be permitted "only upon an order of a court of competent jurisdiction" when those parties are *otherwise entitled by statute to access*. We further hold that such access is available only under our statutory procedures for discovery in civil or criminal cases. *See, e.g., Blumkin v. New York*, 183 Misc. 31, 47 N.Y.S. 2d 492 (1944).

To the extent that our opinion in *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334, *cert. denied*, 377 U.S. 978 (1964) can be read as implying that our trial courts are given unfettered discretion by N.C.G.S. 114-15 to make S.B.I. records and evidence public, that opinion is expressly disapproved. The discretion possessed by our trial courts in this regard is limited to that necessary to

the performance of their duties in applying the statutory procedures for civil and criminal discovery.

[2] The News and Observer did not appear before the Superior Court as a defendant in a criminal case. Therefore, it was not entitled to discovery under the procedures applicable in criminal cases. *See generally* N.C.G.S. 15A-902 to 910. The rules permitting discovery in civil cases also were unavailable to the News and Observer. *See generally* N.C.G.S. 1A-1, Rules 26 to 37. Those rules are designed to allow discovery only when the information sought is "reasonably calculated to lead to the discovery of admissible evidence" to be used in the trial of the action in which discovery is sought. *See* N.C.G.S. 1A-1, Rule 26(b)(1). In the instant case, the News and Observer petitioned the Superior Court seeking as its sole relief the disclosure of the S.B.I. records of the investigation of Dr. Murphy. It is clear that the News and Observer did not seek the S.B.I. records on the ground that they were reasonably calculated to lead to the discovery of admissible evidence to be used in the trial of any pending action. Instead, it sought access to the S.B.I. records only due to its desire to know and publish the contents. Although Rule 26 is to be construed liberally, it does not allow one person "to roam at will in the closets of the other." *Willis v. Power Co.*, 291 N.C. 19, 34, 229 S.E. 2d 191, 200 (1976).

We have construed N.C.G.S. 114-15 as providing any member of the public a right of access to S.B.I. records, but only when such person is entitled to access under the statutory procedures for discovery in criminal or civil cases. The News and Observer had no right to discovery under any of those procedures. Therefore, we must reverse the holding of the Court of Appeals which affirmed the order of the trial court requiring the Director of the S.B.I. to disclose the S.B.I. records of the investigation of Dr. Murphy.

[3] The News and Observer further argues, however, that even if it is not entitled to access to the S.B.I. records under N.C.G.S. 114-15, it or any member of the public has a constitutional right of access to them. It argues that the First Amendment goes beyond the protection of the press and requires the government to allow public access to such records when they are of legitimate public interest. In support of this argument, the News and Observer

relies upon several decisions of the Supreme Court of the United States holding that the press and members of the public have a right of access to places or events traditionally open to the public. *See, e.g., Press Enterprise Co. v. Superior Court,* --- U.S. ---, 104 S.Ct. 819 (1984) (jury *voir dire*); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596 (1982) (child sex offense victim's testimony); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555 (1980) (criminal trials).

Although we recognize the general right of the public to have access to information about the actions of public agencies, the legislature still may properly limit the right of public access in appropriate cases. We take guidance from cautionary language in a concurring opinion by Justice Brennan in *Richmond Newspapers*. In discussing cases involving access to public records, Justice Brennan stated that:

> Read with care and in context, our decisions must therefore be understood as holding only that any privilege of access to governmental information is subject to a degree of restraint dictated by the nature of the information and the countervailing interest in security or confidentiality.

448 U.S. at 586 (Brennan, J., concurring). "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk,* 381 U.S. 1, 17, *reh. denied,* 382 U.S. 873 (1965). *See generally Saxbe v. Washington Post Co.,* 417 U.S. 843 (1974) (restrictions on access to prisons); *Pell v. Procunier,* 417 U.S. 817 (1974) (same).

Courts in several States, when faced with constitutional challenges similar to those raised here by the News and Observer, have upheld restrictions on disclosure of police reports similar to the restrictions on disclosure of S.B.I. records we have found N.C.G.S. 114-15 to include. *See, e.g., New Bedford Standard Times Publishing Co. v. Clerk of Third District Court,* 377 Mass. 404, 387 N.E. 2d 110 (1979); *Houston Chronicle Publishing Co. v. Houston,* 531 S.W. 2d 177 (Tex. Civ. App. 1975); *Black Panther Party v. Kehoe,* 42 Cal. App. 3d 645, 117 Cal. Rptr. 106 (1974); Annot. 82 A.L.R. 3d 19 (1978). We share their view and hold that the restrictions we have found to be embodied in N.C.G.S. 114-15 limiting disclosure of S.B.I. records do not violate any rights

guaranteed by the First Amendment to the Constitution of the United States.

For the foregoing reasons, the decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals with instructions to vacate the order of the trial court requiring the disclosure of S.B.I. records.

Reversed and remanded.