PIEDMONT PUBLISHING COMPANY, INC. D/B/A THE *WINSTON-SALEM JOURNAL*, JOE GOODMAN, JOE STINEBAKER AND LAURA KNIGHT v. CITY OF WINSTON-SALEM AND GEORGE L. SWEAT

No. 352PA92

(Filed 10 September 1993)

### State § 1.2 (NCI3d) — police communications or reports — part of criminal investigation — not public records

The trial court did not err by denying plaintiff's motion to compel the release of communications or reports by two officers during a disturbance in which one of the officers was killed. Although it appears that the Public Record Act provides that the recordings at issue in this case are public records which should be subject to inspection and copying by the plaintiff, Article 48 of Chapter 15A of the General Statutes, which provides specifically for discovery in criminal actions, governs in this case because the copies of recordings the plaintiff seeks to obtain were unquestionably gathered by the Winston-Salem Police Department in the course of a criminal investigation and are part of the State's file in a pending criminal action. When one statute deals with a particular subject in detail, and another in general and comprehensive terms, the more specific statute will be controlling. N.C.G.S. § 132-1.

**Am Jur 2d, Depositions and Discovery § 81.**

**Privilege of custodian, apart from statute or rule, from disclosure, in civil action, of official police records and reports. 36 ALR2d 1318.**

Chief Justice EXUM dissenting.

Justice MITCHELL dissenting.

Chief Justice EXUM and Justice FRYE join this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 prior to determination by the Court of Appeals of a judgment entered for the defendants on 5 August 1992 by Barefoot, J., in Superior Court, Forsyth County. Heard in the Supreme Court 12 May 1993.

The facts giving rise to this case are not in dispute. In the early morning hours of 26 June 1992, Winston-Salem police officers

responded to reports of unauthorized operation of heavy road-working equipment by several unknown individuals in the city's Lakeside neighborhood. Lieutenant Aaron G. Tise, Jr. was among the officers who investigated the disturbance. During his investigation, Lt. Tise was killed when the police cruiser he was driving was run over by a motor grader operated by one of the suspects. Another Winston-Salem police officer, Dan Dodder, was injured during the incident. Four teenaged residents of the city were charged with murder in connection with Lt. Tise's death.

Nearly all radio and telephone communications relating to the incident were recorded on magnetic tapes by the Winston-Salem Police Communications Center. The recordings included telephone communications between private citizens and police, and radio communications between the police officers who were on the scene, and between those officers and the police dispatcher. The recordings were subsequently transcribed and retained by the Winston-Salem Police Department at the behest of the Honorable Thomas J. Keith, District Attorney for the Twenty-First Prosecutorial District.

The plaintiff, the *Winston-Salem Journal*, thereafter sought to inspect, examine and obtain copies of the recorded communications pursuant to the Public Records Act, N.C.G.S. § 132-1, *et seq.* The defendant, through the chief of police, initially denied the plaintiff's request. However, the majority of the recordings were subsequently released to the plaintiff. The only recordings which were not released contained communications or reports by Lt. Tise and Officer Dodder to the Police Communications Center.

The plaintiff filed this action pursuant to N.C.G.S. § 132-9, seeking a declaration that the recordings are "public records" and subject to inspection and copying. The court denied the plaintiff's motion to compel the release of the material and dismissed the action. The plaintiff appealed.

This Court allowed the plaintiff's petition for discretionary review prior to determination by the Court of Appeals.

*Everett, Gaskins, Hancock & Stevens, by Hugh Stevens and Katherine R. White, for plaintiff-appellants.*

**PIEDMONT PUBLISHING CO. v. CITY OF WINSTON-SALEM**

[334 N.C. 595 (1993)]

*Bell, Davis & Pitt, P.A., by William Kearns Davis and Stephen M. Russell; City of Winston-Salem, by Ronald G. Seeber; and Winston-Salem Police Department, by Mary Claire McNaught, for defendant-appellees.*

*North Carolina League of Municipalities, by S. Ellis Hankins, General Counsel, and Kimberly L. Smith, Assistant General Counsel, amicus curiae.*

WEBB, Justice.

The copies of recordings the plaintiff seeks to obtain in this case were unquestionably gathered by the Winston-Salem Police Department in the course of a criminal investigation and are part of the State's file in a pending criminal action. Article 48 of Chapter 15A of the General Statutes provides for discovery, only by the defendant, of materials in the possession of the State for use in a criminal action.

The plaintiff contends it is entitled to copies of the recordings under Chapter 132 of the General Statutes, the Public Records Act. N.C.G.S. § 132-1 provides in part:

"Public record" or "public records" shall mean all documents, . . . sound recordings, magnetic or other tapes, . . . made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions.

N.C.G.S. § 132-6 provides that any person may examine public records and have copies made of them. It does seem that with nothing else appearing, N.C.G.S. § 132-1 provides that the recordings at issue in this case are public records which should be subject to inspection and copying by the plaintiff. *See News and Observer Publishing Co. v. Poole*, 330 N.C. 465, 412 S.E.2d 7 (1992).

In this case something else does appear. Article 48 of Chapter 15A of the General Statutes provides for discovery in criminal actions. If the Public Records Act applies to information the State procures for use in a criminal action, there would be no need for Article 48. A criminal defendant could obtain much more extensive discovery under the Public Records Act. It is illogical to assume that the General Assembly would preclude a criminal defendant from obtaining certain investigatory information pursuant to the criminal discovery statutes while at the same time mandating the

release of this information to the defendant, as well as the media and general public, under the Public Records Act.

If we were to adopt the position advocated by the plaintiffs, that Chapter 132 applies in this case, the files of every district attorney in the state could be subject to release to the public. Among the matters that would have to be released would be the names of confidential informants, the names of undercover agents, and the names of people who had been investigated for the crime but were not charged. We do not believe the General Assembly intended this result. *See News and Observer v. State*, 312 N.C. 276, 322 S.E.2d 133 (1984).

One canon of construction is that when one statute deals with a particular subject matter in detail, and another statute deals with the same subject matter in general and comprehensive terms, the more specific statute will be construed as controlling. *Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 151 S.E.2d 582 (1966). Article 48 deals specifically with the disclosure of criminal investigative files as opposed to the more general provisions of Chapter 132. We hold that it governs in this case and there is no provision in it for discovery by anyone other than the State or the defendant.

The judgment of the superior court is affirmed.

AFFIRMED.

Chief Justice EXUM dissenting.

I agree with the dissenting opinion of Justice Mitchell and join in it. I write separately to say why I think the majority's reliance on our criminal discovery statutes is misplaced, a point not dealt with in Justice Mitchell's dissent.

To me, the criminal discovery statutes have nothing to do with the issue in this case. They deal with the narrow subject of what materials a criminal defendant is entitled to see and the procedures which the defendant and the State must follow in making these materials available to the defendant, who is in an adversarial relationship with the State.

The Public Records Act, on the other hand, specifically addresses the issue before us, i.e., the right of the public to have access to certain materials in the hands of public officials. The

PIEDMONT PUBLISHING CO. v. CITY OF WINSTON-SALEM

[334 N.C. 595 (1993)]

public is not in an adversarial relationship with these officials. Indeed, these officials are, in every sense, the public's agents. I am confident the legislature did not intend to limit the public's right to have access to these materials, granted in the Public Records Act, when it later passed statutes addressing the criminal defendant's right to discover materials in the hands of his adversary.

The fallacy of relying on the criminal discovery statutes to resolve this case is made clearer if one considers how the case would be decided if the criminal discovery statutes had never been passed. As I read the majority opinion, in the absence of our criminal discovery statutes, it would hold that the Public Records Act requires disclosure of the materials at issue in this case. Thus had the criminal discovery statutes not been passed, the majority would hold that the Public Records Act controls in favor of plaintiffs' position. The criminal discovery statutes, of course, were passed to expand the discovery rights of criminal defendants, which were practically nonexistent at common law. It makes no sense to me to hold that statutes designed to expand the discovery rights of criminal defendants somehow diminish the public's access to public records under the Public Records Act.

Justice MITCHELL dissenting.

Under the common law, citizens had limited rights to the disclosure of public documents. *News and Observer Publishing Co. v. State*, 312 N.C. 276, 280, 322 S.E.2d 133, 136 (1984). However, citizens had no right of access to information possessed by the government concerning alleged violations of criminal law. *Id.* Although sound and perhaps compelling reasons of public policy supported such common law rules, they no longer control; access to public records is now specifically controlled in this State by the Public Records Act, N.C.G.S. §§ 132-1 to -9. "When the General Assembly as the policy-making agency of our government legislates with respect to the subject matter of any common law rule, the statute supplants the common law and becomes the law of the State." *News and Observer v. State*, 312 N.C. at 281, 322 S.E.2d at 137. Thereafter, neither common law principles *nor this Court's public policy preferences* control.

As the majority acknowledges, the records sought by the plaintiffs are records of a type included within the term "public records" as that term is defined in N.C.G.S. § 132-1. The General Assembly,

as the policy-making agency of this State, has specifically and expressly directed by statute that custodians of such public records "shall permit them to be inspected and examined at reasonable times" and "furnish certified copies thereof on payment of fees as prescribed by law." N.C.G.S. § 132-6 (1991). The issue for this Court to decide, then, is whether any exception to the Public Records Act applies in this case.

In *News and Observer v. State*, the plaintiffs sought access under the Public Records Act to certain investigative files of the North Carolina State Bureau of Investigations (SBI). We concluded in that case that the legislature had adopted the Public Records Act in order "to provide that, as a general rule, the public would have liberal access to public records." *News and Observer v. State*, 312 N.C. at 281, 322 S.E.2d at 137. We further concluded that the plaintiffs in that case were not entitled to access to SBI records *but only because* in another statute, N.C.G.S. § 114-15, the General Assembly by the clearest and most specific language possible had provided that SBI records "shall not be considered public records" within the meaning of the Public Records Act. *Id.* at 281-82, 322 S.E.2d at 137 (quoting N.C.G.S. § 114-15). Similarly, when the General Assembly has decided for "public policy" reasons to except any other records whatsoever from the disclosure requirements of the Public Records Act, it has done so by equally narrow and specific exemptions. *E.g.*, N.C.G.S. § 132-1.1 (1991) (confidential communications by legal counsel to public board or agency); N.C.G.S. § 132-1.2 (1991) ("trade secrets" and other confidential information provided by private parties to government for limited purposes); N.C.G.S. § 132-6 (1991) (proposed expansion or location of specific business or industrial projects in the State). Neither the defendants in this case nor the majority of this Court have identified any such statute specifically excepting records maintained by city police departments from the mandate of the Public Records Act that such records be made available for inspection and copying. This omission is quite understandable; *no such statute exists*. Therefore, the public's right of access to the records at issue in the present case is controlled solely by the terms of the Public Records Act as enacted by the General Assembly, rather than by this Court's view of what constitutes sound public policy. *News and Observer v. State*, 312 N.C. at 281, 322 S.E.2d at 137.

In defending the holding in the present case, the opinion of the majority advances the quite reasonable public policy concern

that disclosure of records such as those at issue here could lead in other cases to the disclosure of names of confidential informants, undercover agents, or individuals who have been investigated for crimes but not charged. This Court has previously recognized the validity of such public policy concerns. In fact, in holding that SBI records were not subject to disclosure under the Public Records Act, we expressly stated that we assumed that *the General Assembly* had considered such valid "reasons for denying access to police records, as well as the common law and statutory history concerning such access, when it enacted *the statute* declaring S.B.I. records not to be public and, thereby, exempted them from disclosure under the Public Records Act." *Id.* at 283, 322 S.E.2d at 138 (emphasis added). In the nine years since we rendered that opinion highlighting the public policy reasons for denying access to police records, however, the General Assembly has not seen fit to adopt a statute exempting records of police departments from the Public Records Act like the specific exemption it enacted for SBI records.

The General Assembly has clearly demonstrated by enacting N.C.G.S. § 114-15 and other statutes that it knows how to create a specific exemption from the requirements of the Public Records Act for police department records if it desires to do so. Until the General Assembly enacts such an exception, however, it is the duty of this Court to apply the Public Records Act as written. Accordingly, we are required to resist all temptations to exceed our legitimate authority by adding public policy exceptions to the Public Records Act which have not been placed there by the General Assembly. *News and Observer Publishing Co. v. Poole*, 330 N.C. 465, 483-84, 412 S.E.2d 7, 18 (1992); *Advance Publications, Inc. v. City of Elizabeth City*, 53 N.C. App. 504, 506, 281 S.E.2d 69, 70-71 (1981). If we are to fulfill our duty as judges to apply the Public Records Act as written by the legislature, we are left with no choice in this case but to hold that the defendants must allow the plaintiffs access to the documents they seek.

For the foregoing reasons, I respectfully dissent from the decision of the majority which denies the plaintiffs access to public records.

Chief Justice Exum and Justice Frye join in this dissenting opinion.