THOMAS A. McCORMICK, in his official capacity as CITY ATTORNEY FOR THE CITY OF RALEIGH, Plaintiff v. HANSON AGGREGATES SOUTHEAST, INC., Defendant

No. COA03-630

(Filed 1 June 2004)

**1. Declaratory Judgments— government action to resist public records disclosure—improper**

It was improper for a city attorney to use a declaratory judgment action to resist disclosure of documents alleged to be public records. Only the person making the public records request is entitled to initiate judicial action to seek enforcement of its request. However, the merits of the city attorney's action would have reached the trial court on defendant's counterclaim to compel disclosure, and the trial court's ruling was addressed on appeal.

**2. Public Records— city attorney—law enforcement agency**

The Raleigh City Attorney's office qualifies as a public law enforcement agency for purposes of the criminal investigation exception under N.C.G.S. § 132-1.4 (The Public Records Act) because it is responsible under the Raleigh City Charter for investigating, preventing, and solving zoning violations.

**3. Public Records— criminal investigation—in camera review required—purpose in preparing documents**

The criminal investigation exception of the Public Records Act does not apply solely to ongoing violations of the law. In this case the trial court erred by applying a straight-line rule based on the two-year statute of limitations for misdemeanors. The court

McCORMICK v. HANSON AGGREGATES SOUTHEAST, INC.

[164 N.C. App. 459 (2004)]

should have conducted an in camera review to determine whether the material was subject to the exception based on the purpose in compiling each withheld document and the definitions found in the statute. Moreover, on remand the court may disclose documents which do not qualify as public records but which could be obtained by normal discovery.

**4. Public Records— criminal discovery exceptions— misdemeanors**

A city attorney pursuing zoning violations was not entitled to the discovery protections of Chapter 15A, and therefore to a Public Records exception. Chapter 15A is not applicable to misdemeanors. N.C.G.S. § 15A-901.

**5. Public Records— city attorney—attorney-client privilege**

An order compelling the release of documents by a city attorney was remanded where it was not clear whether the court was acting under the common law privilege or the Public Records Act. Furthermore, the court's application of the rule that confidential documents are subject to disclosure after three years was contrary to the statute in that it focused on the date of the document's creation rather than the date the material was received by the governmental body.

**6. Public Records— city attorney—work product—subject to disclosure**

A city attorney's work product was subject to disclosure under the Public Records Act unless the individual documents were independently exempted by virtue of the criminal investigation exception.

Appeal by plaintiff Thomas A. McCormick, in his official capacity as City Attorney for the City of Raleigh, and appeal by defendant from judgment filed 19 November 2002 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 26 February 2004.

*City of Raleigh Attorney Thomas A. McCormick, by Associate City Attorney Dorothy K. Leapley, for plaintiff-appellant.*

*Kennedy Covington Lobdell & Hickman, L.L.P., by A. Lee Hogewood, III, for defendant-appellant.*

BRYANT, Judge.

Thomas A. McCormick (the City Attorney), in his official capacity as City Attorney for the City of Raleigh, and Hanson Aggregates Southeast, Inc. (defendant) separately appeal a judgment filed 19 November 2002 ordering the partial disclosure of certain documents compiled by the City Attorney.

The City Attorney filed a complaint dated 26 June 2002 seeking a declaratory judgment from the trial court that certain documents defendant sought to obtain via a public records request on 17 June 2002 were not subject to disclosure. Defendant's public records request sought production of "all 'public records' within the meaning of G.S. § 132-1 that are in the possession or under the control of [the City Attorney's] department and that relate to the property [owned by defendant] located at 5333 Duraleigh Rd., Raleigh and commonly referred to as the Crabtree Quarry." The City Attorney alleged the documents (1) were protected by the rules governing attorney-client privilege and work product and (2) did not qualify as public records based on the criminal investigation exception in N.C. Gen. Stat. § 132-1.4. Background information contained in the complaint included the issuance of a 23 April 2002 order for compliance by the City of Raleigh Zoning Inspector Supervisor directing defendant "to cease removing dirt and borrow from one of the tracts owned by [defendant]." Defendant had appealed the order, and the appeal was pending before the Raleigh Board of Adjustment at the time of the filing of the declaratory judgment action. The City of Raleigh was to appear at the Board of Adjustment appellate hearing to offer evidence in support of the zoning inspector's order.

On 19 July 2002, defendant filed its answer and counterclaim (1) confirming the City Attorney's refusal to produce the requested documents and (2) petitioning the trial court for an order compelling the City Attorney to grant access to the requested records for inspection. The City Attorney moved for judgment on the pleadings on 21 August 2002.

In its 19 November 2002 judgment, the trial court found:

After reviewing the pleadings, as well as the relevant statutes and decisions, it appears to the Court that the City Attorney attempts to withhold records, utilizing the Criminal Investigation exception (G.S. [§] 132-1.4(3)), created from 1985 to the present, even though **it is undisputed that the City has**

**never instituted criminal charges against [defendant] or its predecessors for any alleged violation from 1985 through the present day**. A zoning ordinance violation is a violation of a local ordinance and is a misdemeanor punishable under the criminal law. **G.S. [§] 132-1.4(3)[,] (4) and G.S. [§] 14-4(b)**.

A misdemeanor must be prosecuted within two years under G.S. § 15-1, and at this point any alleged zoning ordinance violations **are no longer prosecutable to the extent that they occurred more than two years ago**.

(Emphasis in original). The trial court concluded that the City of Raleigh and the City Attorney qualified as a "public law enforcement agency" responsible for investigating, preventing, or solving violations of law as defined in N.C. Gen. Stat. § 132-1.4(b)(3). The trial court further concluded that the records withheld by the City Attorney pursuant to section 132-1.4 were "not public records as defined in the Public Records Law." In exercising its discretion under N.C. Gen. Stat. § 132-1.4(a), however, the trial court ordered that those records "withheld solely on the basis of G.S. § 132-1.4 . . . which were prepared more than two years prior to October 31, 2002 be produced to [defendant] for inspection and copying." In addition, the trial court ordered the production of "all work product or materials that were withheld by [the City Attorney] based on the attorney-client privilege **that are dated more than three years before October 31, 2002**." (Emphasis in original). Conversely, the trial court denied production of documents: (1) related to any investigation of [defendant's] activities by the City of Raleigh and dated October 31, 2000 or later" and (2) that "are work product or based on the statutory attorney-client privilege to the extent that those documents are dated October 31, 1999 or later." Based on its ruling, the trial court dismissed defendant's counterclaim as moot.

The issues are whether: (I) a declaratory judgment action in this matter was improper; (II) the criminal investigation exception to the Public Records Act applies to the City Attorney's Office and, if so, was properly applied by the trial court; and (III) the trial court erred in its interpretation of the Public Records Act with respect to privileged material and the City Attorney's work product.

McCORMICK v. HANSON AGGREGATES SOUTHEAST, INC.

[164 N.C. App. 459 (2004)]

## I

### *Declaratory Judgment Action*

[1] We first address defendant's argument that the Public Records Act was not designed to allow a government entity to file for a declaratory judgment, thereby forcing the party making the public records request into litigation when it has not yet sought to compel discovery through the courts. *See* N.C.G.S. § 132-9(a) (2003) ("[a]ny person who is denied access to public records for purposes of inspection and examination, or who is denied copies of public records, may apply to the appropriate division of the General Court of Justice for an order compelling disclosure or copying"). North Carolina law is silent on the question of whether a government agency may bring a declaratory judgment action under these circumstances. However, we find the following California Supreme Court holding instructive:

> Permitting a public agency to circumvent the established special statutory procedure by filing an ordinary declaratory relief action against a person who has not yet initiated litigation would eliminate statutory protections and incentives for members of the public in seeking disclosure of public records, require them to defend civil actions they otherwise might not have commenced, and discourage them from requesting records pursuant to the Act, thus frustrating the Legislature's purpose of furthering the fundamental right of every person . . . to have prompt access to information in the possession of public agencies. Therefore, we also conclude that the superior court abused its discretion in granting declaratory relief in the action initiated by the city . . . and that the court instead should have sustained petitioner's demurrer to the city's complaint.

*Filarsky v. Superior Court*, 28 Cal. 4th 419, 423-24, 49 P.3d 194, 195 (2002).

The North Carolina Public Records Act clearly gives the public a right to access records compiled by government agencies. *See News and Observer Publ'g Co. v. Poole*, 330 N.C. 465, 475, 412 S.E.2d 7, 13 (1992) (" 'the legislature intended to provide that, as a general rule, the public would have liberal access to public records' ") (quoting *News and Observer v. State*, 312 N.C. 276, 281, 322 S.E.2d 133, 137 (1984)); N.C.G.S. § 132-1(b) (2003) (the public records compiled by the agencies of North Carolina government "are the property of the people"). "The Public Records Act permits public access to all public

records in an agency's possession 'unless either the agency or the record is specifically exempted from the statute's mandate.' " *Gannett Pacific Corp. v. N.C. State Bureau of Investigation*, 164 N.C. App. 154, 156, —— S.E.2d ——, —— 2004 N.C. App. LEXIS 693, at *3-4 (2004) (citing *Times-News Publishing Co. v. State of North Carolina*, 124 N.C. App. 175, 177, 474 S.E.2d 450, 452 (1996)). Further, the Public Records Act does not appear to allow a government entity to bring a declaratory judgment action; only the person making the public records request is entitled to initiate judicial action to seek enforcement of its request. *See* N.C.G.S. § 132-9(a) (2003) ("[a]ny person who is denied access to public records for purposes of inspection and examination, or who is denied copies of public records, may apply to the appropriate division of the General Court of Justice for an order compelling disclosure or copying"). We therefore hold, based on the Public Records Act and the policy consideration for disclosure under the act which are very similar to those noted by the Court in *Filarsky*, that the use of a declaratory judgment action in the instant case was improper.

However, even in the absence of the City Attorney's declaratory judgment action, the merits of this case would have reached the trial court since defendant counterclaimed to compel disclosure. *See Jennette Fruit v. Seafare Corp.*, 75 N.C. App. 478, 482, 331 S.E.2d 305, 307 (1985) ("a counterclaim survives the dismissal of the plaintiff's original claim"). Thus, we feel compelled to address the trial court's ruling on the merits, as the trial court would undoubtedly enter identical findings and conclusions upon a reversal of the declaratory judgment action in conjunction with a remand by this Court on defendant's counterclaim (previously dismissed as moot).

II

*Criminal Investigation Exception*

Both sides to this litigation take issue with the trial court's application of the criminal investigation exception to the materials withheld by the City Attorney. Defendant contends the City Attorney does not qualify as a "public law enforcement agency" under the statute, whereas the City Attorney takes issue with the trial court's application of the two-year statute of limitations for misdemeanors and contends the materials were further protected by Chapter 15A.

N.C. Gen. Stat. § 132-1.4 provides for the protection of criminal investigations and intelligence information and states in pertinent part:

McCORMICK v. HANSON AGGREGATES SOUTHEAST, INC.

[164 N.C. App. 459 (2004)]

(a) Records of criminal investigations conducted by public law enforcement agencies or records of criminal intelligence information compiled by public law enforcement agencies are not public records as defined by G.S. 132-1. Records of criminal investigations conducted by public law enforcement agencies or records of criminal intelligence information may be released by order of a court of competent jurisdiction.[1]

(b) As used in this section:

(1) "Records of criminal investigations" means all records or any information that pertains to a person or group of persons that is compiled by public law enforcement agencies for the purpose of attempting to prevent or solve violations of the law, including information derived from witnesses, laboratory tests, surveillance, investigators, confidential informants, photographs, and measurements.

(2) "Records of criminal intelligence information" means records or information that pertain to a person or group of persons that is compiled by a public law enforcement agency in an effort to anticipate, prevent, or monitor possible violations of the law.

(3) "Public law enforcement agency" means a municipal police department, a county police department, a sheriff's department, a company police agency commissioned by the Attorney General pursuant to G.S. 74E-1, et seq., and any State or local agency, force, department, or unit responsible for investigating, preventing, or solving violations of the law.

(4) "Violations of the law" means crimes and offenses that are prosecutable in the criminal courts in this State or the United States and infractions as defined in G.S. 14-3.1.

N.C.G.S. § 132-1.4(a)-(b) (2003).

---

1. Such discretionary disclosure of non-public records by the trial court must be governed by "one of the procedures already provided by law for discovery in civil or criminal cases." *News and Observer v. State*, 312 N.C. at 277, 322 S.E.2d at 135.

McCORMICK v. HANSON AGGREGATES SOUTHEAST, INC.

[164 N.C. App. 459 (2004)]

A

*Public Law Enforcement Agency*

[2] The City Attorney's Office thus qualifies as a "public law enforcement agency" for purposes of the criminal investigation exception if it carries the "responsib[ility] for investigating, preventing, or solving violations of the law."[2] N.C.G.S. § 132-1.4(b)(3) (2003). Because the statute applies to all "crimes and offenses that are prosecutable in the criminal courts in this State or the United States and infractions as defined in G.S. 14-3.1," violations of zoning ordinances qualify as "violations of the law." N.C.G.S. §§ 132-1.4(b)(4), 14-4 (2003) (violations of local ordinances punishable as misdemeanors); David M. Lawrence, *Public Records Law for North Carolina Local Governments* 108 (Institute of Government 1997) [hereinafter *Public Records*] ("if violation of a statute, ordinance, or regulation can cause the violator to be answerable in a criminal proceeding or in an infraction proceeding, it is a *violation of the law* as defined in G.S. 132-1.4"). As the City Attorney's Office is responsible for investigating, preventing, and solving zoning violations, *see* Raleigh City Charter § 5.6 (the City Attorney has the duty "to prosecute and defend all suits-at-law or in equity in which the City of Raleigh may become the plaintiff or defendant") and § 10-2152(4) (granting criminal enforcement powers over misdemeanors and infractions), it qualifies as a "public law enforcement agency" under section 132-1.4, *see Public Records* 108 ("any organizational unit within a county or city that is responsible for enforcement of a statute, ordinance, or regulation that carries misdemeanor or infraction penalties is capable of generating records that are covered by the statute").

B

*Continuing Investigation*

[3] Having ruled that the criminal investigation exception to the Public Records Act is applicable to investigations conducted by the City Attorney's Office, we now turn to the City Attorney's contention that the trial court erred in ordering the production of those records "withheld solely on the basis of G.S. § 132-1.4 . . . which were prepared more than two years prior to October 31, 2002." Specifically, the City Attorney argues that, in doing so, the trial court failed to consider whether production of the material could "compromise ongoing or future investigations."

---

2. Contrary to defendant's assertion in its brief to this Court, this is a legal, not a factual determination.

McCORMICK v. HANSON AGGREGATES SOUTHEAST, INC.

[164 N.C. App. 459 (2004)]

As is clear from the plain words of the statute, the criminal investigation exception does not apply solely to ongoing violations of the law. The statute also speaks to "attempt[s] to prevent . . . violations of the law," N.C.G.S. § 132-1.4(b)(1), (3) (2003), and "effort[s] to anticipate . . . or monitor possible violations of the law," N.C.G.S. § 132-1.4(b)(2) (2003). The statute thus contemplates situations involving investigative reports compiled prior to any actual violations. Furthermore, as observed in a publication by the North Carolina Institute of Government, North Carolina's Public Records Act "does not distinguish between active and inactive or closed investigations." *Public Records* 110. Considering the many underlying purposes for the criminal investigation exception—protecting investigative techniques, informant identities, and reputations of persons investigated but not charged, and encouraging citizens to volunteer information—"closing an investigation [should have] no effect on the status of the records of that investigation." *Public Records* 111; *see also News and Observer v. State*, 312 N.C. at 282-83, 322 S.E.2d at 138 (noting as rationale for exemption of criminal investigation reports: their common reliance on hearsay, opinions, and conclusions of investigators; the protection of investigative techniques and confidentiality of government informants; and the impairing implications for future investigations, including stifling witnesses' willingness to "respond candidly"). *See also Gannett*, 164 N.C. App. at 161, —— S.E.2d at ——, 2004 N.C. App. LEXIS at *13 (holding criminal intelligence records of completed SBI investigation not public records subject to disclosure). Accordingly, we agree with the City Attorney that the trial court erred in adopting a straight-line rule through the application of the 2-year statute of limitations for misdemeanors. In light of the broad scope and purposes behind the criminal investigation exception, the trial court should have conducted an *in camera* review, as requested by the City Attorney, to properly determine, based on the purpose in compiling each withheld document and the definitions for "records of criminal investigations" and "records of criminal intelligence information" found in sections 132-1.4(b)(1)-(2), whether the material was subject to the exception.[3]

With respect to documents on remand that the trial court may conclude do not qualify as public records under section 132-1.4, we observe that section 132-1.4(a) grants the trial court the discretion to nevertheless disclose such documents if they could be obtained by

---

3. We note that, in its brief to this Court, defendant also advocates the need for an *in camera* review.

defendant pursuant to the normal rules of discovery. *See News and Observer v. State*, 312 N.C. at 277, 322 S.E.2d at 135.

## C

### *Chapter 15A Protections*

**[4]** The City Attorney contends he was further entitled to the protections granted by the discovery rules of Chapter 15A governing the North Carolina Rules of Criminal Procedure. We disagree.

In addition to the provisions listed above, the criminal investigation exception to the Public Records Act provides:

> (h) Nothing in this section shall be construed as requiring law enforcement agencies to disclose the following:
>
> > (1) Information that would not be required to be disclosed under Chapter 15A of the General Statutes.

N.C.G.S. § 132-1.4(h)(1) (2003). The City Attorney's Office, however, is not subject to this provision because zoning violations, prosecutable only as misdemeanors, fall within the jurisdiction of the district court. Chapter 15A, which is subject to the superior court's jurisdiction, is therefore not applicable. *See* N.C.G.S. § 7A-271(a) (2003) ("[t]he superior court has exclusive, original jurisdiction over all criminal actions not assigned to the district court division by this Article"); N.C.G.S. § 7A-272(a) (2003) ("the district court has exclusive, original jurisdiction for the trial of criminal actions, including municipal ordinance violations, below the grade of felony"); N.C.G.S. § 15A-901 (2003) ("[t]his Article applies to cases within the original jurisdiction of the superior court"). Moreover, the Official Commentary to N.C. Gen. Stat. § 15A-901 notes:

> As cases in district court are tried before the judge, and usually on a fairly expeditious basis, the Commission decided there was no need at present to provide for discovery procedures prior to trial in district court. As misdemeanors tried in superior court on trial de novo have already had a full trial in district court, there is little reason for requiring discovery after that trial and prior to the new trial in superior court.
>
> This Article, then, applies to felonies and misdemeanors in the original jurisdiction of the superior court.

N.C.G.S. § 15A-901 official commentary (2003). Consequently, this assignment of error is overruled.

McCORMICK v. HANSON AGGREGATES SOUTHEAST, INC.

[164 N.C. App. 459 (2004)]

### III

We next consider whether the trial court erred in its interpretation of the Public Records Act with respect to privileged material and the City Attorney's work product.

### *Privilege*

[5] Defendant contends the trial court erred in failing to apply the limited attorney-client privilege outlined in N.C. Gen. Stat. § 132-1.1(a) when it denied disclosure of "attorney-client materials created within three years from October 31, 2002 in this or any other proceeding." Specifically, defendant argues the trial court: (1) did not apply the statutory factors in determining privilege for purposes of a public records request and (2) erred in setting a fixed three-year period for disclosure dating from the time of the document's creation.

Section 132-1.1(a) provides:

(a) Confidential Communications.—Public records, as defined in G.S. 132-1, shall not include written communications (and copies thereof) to any public board, council, commission or other governmental body of the State or of any county, municipality or other political subdivision or unit of government, made within the scope of the attorney-client relationship by any attorney-at-law serving any such governmental body, concerning any claim against or on behalf of the governmental body or the governmental entity for which such body acts, or concerning the prosecution, defense, settlement or litigation of any judicial action, or any administrative or other type of proceeding to which the governmental body is a party or by which it is or may be directly affected. Such written communication and copies thereof shall not be open to public inspection, examination or copying unless specifically made public by the governmental body receiving such written communications; provided, however, that such written communications and copies thereof shall become public records as defined in G.S. 132-1 three years from the date such communication was received by such public board, council, commission or other governmental body.

N.C.G.S. § 132-1.1(a) (2003). As reiterated by our Supreme Court in *Poole*, the statutory protection for privileged information is more narrow than the traditional common law attorney-client privilege. *Poole*, 330 N.C. at 482, 412 S.E.2d at 17. According to the statute, "[t]he

Public Records Law provides only one exception [based on privilege] to its mandate of public access to public records: written statements to a public agency, by any attorney serving the government agency, made within the scope of the attorney-client privilege," and involving a claim, defense, settlement, litigation, or administrative proceeding. *Id.* at 481-82, 412 S.E.2d at 17; N.C.G.S. § 132-1.1(a).

In this case, the wording of the trial court order leaves in doubt whether the trial court meant to disclose material under the common law privilege or under the strict guidelines of section 132-1.1. In addition, the bright-line three-year-rule adopted by the trial court, focusing on the date of a document's *creation*, is contrary to the mandate of the statute providing that all confidential documents falling within the definition of the statute become subject to disclosure as a public record "three years from the date such communication was *received* by [a] public board, council, commission or other governmental body." N.C.G.S. § 132-1.1(a) (emphasis added). We therefore remand this issue to the trial court for a consideration of and ruling on the City Attorney's documents consistent with the provisions of section 132-1.1(a).

### Work Product

[6] In its brief to this Court, the City Attorney, recognizing the absence of any explicit exception for work product in the Public Records Act, argues for the proposition that the common law work product rule operates as an exception to the Act.

In support of his contention, the City Attorney relies on the provision contained in N.C. Gen. Stat. § 132-1(b), stating that "it is the policy of this State that the people may obtain copies of their public records and public information free or at minimal cost *unless otherwise specifically provided by law.*" N.C.G.S. § 132-1(b) (2003) (emphasis added). According to the City Attorney, the language "unless otherwise specifically provided by law" presents a clear intent by the Legislature to "incorporate[] statutory and common law privileges into the Public Records Act, including work product immunity." We disagree with this broad reading of the statute.

In *In re Decision of the State Bd. of Elections*, this Court interpreted the language of section 132-1(b) to only recognize an exception to the Public Records Act in the face of "a 'clear statutory exemption or exception' to the Act." *In re Decision of the State Bd. of Elections*, 153 N.C. App. 804, 806, 570 S.E.2d 897, 898 (2002) (quoting

McCORMICK v. HANSON AGGREGATES SOUTHEAST, INC.

[164 N.C. App. 459 (2004)]

*Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 462, 515 S.E.2d 675, 685 (1999)), *disc. review denied*, 356 N.C. 671, 577 S.E.2d 114 (2003). In other words, "North Carolina's public records act grants public access to documents it defines as 'public records,' absent a specific *statutory* exemption." *Virmani*, 350 N.C. at 465, 515 S.E.2d at 686 (citing N.C.G.S. § 132-1(b)) (emphasis added). Accordingly, in the history of the Public Records Act, only statutory, not common law exceptions have been recognized. *See, e.g., Poole*, 330 N.C. at 476, 412 S.E.2d at 14 (recognizing "personnel file" exception in N.C. Gen. Stat. § 126-22 as an exemption to the rule on disclosure of public records); *Bd. of Elections*, 153 N.C. App. at 806, 570 S.E.2d at 898 (upholding exception to Public Records Act based on specific statutory provision limiting access to election ballots). As there is "[n]o statute specifically exempt[ing] from public access materials held by a local government attorney that qualify as work product" which would apply to the City Attorney, the City Attorney's documents are not protected from disclosure as work product.[4] *Public Records* 126.

The City Attorney, however, argues that even prior to the enactment of section 132-1(b), North Carolina case law indicated that work product immunity would trump a public record requests. The City Attorney relies on our Supreme Court's holding in *Piedmont Publ'g Co. v. City of Winston-Salem*, 334 N.C. 595, 434 S.E.2d 176 (1993). This unique case and its underlying policy are easily distinguished. *Piedmont* involved a public records request by a newspaper of audio tapes containing the radio transmissions of a police officer who had been fatally injured in a motor vehicle collision. *Id.* at 597-98, 434 S.E.2d at 177-78. The Supreme Court held that the rules governing discovery in criminal actions created an implicit exception to the Public Records Act and that the radio tapes fell within this exception. *Id.* The Supreme Court reasoned that, if the tapes could not be obtained by a criminal defendant under the rules for criminal discovery, they could also not be available through the use of a public records request by a third party. Otherwise, a criminal defendant whose discovery request was denied by the trial court could simply ask a third person to make a public records request so as to obtain such information notwithstanding the discovery ruling. *Id.* The Supreme Court

---

4. Exceptions for work product do exist, for example, for the Attorney General's Office. N.C.G.S. §§ 90-21.33(d), 131E-192.10(d) (2003) ("[i]n any action instituted under this section, the work product of the Department or the Attorney General or his staff is not a public record under Chapter 132 of the General Statutes and shall not be discoverable or admissible").

therefore ruled that the criminal discovery rules, limiting disclosure to the State and the defendant, governed over the newspaper's public records request. *Id.* at 598, 434 S.E.2d at 178.

As the civil discovery rules protect the disclosure of both privileged material and work product, the City Attorney contends that the holding in *Piedmont* also provides an exception in the case *sub judice.* Although use of the Public Records Act in the manner described in *Piedmont* would likewise allow for circumvention of the rules of discovery in a civil case between a litigant and a government entity, the same policy implications do not apply in the civil context.

> [I]f the criminal discovery laws did not create an implicit exception to the public records law, there would be no purpose whatever to the criminal discovery laws. The only material that those laws protect is material in the possession of public agencies, either law enforcement agencies or the district attorney's office; in the absence of statutory protection, all the material held by either a law enforcement agency or the district attorney is public record and open to public inspection. Therefore, if the rules of criminal discovery were to have any effect at all, the rules must have created an exception to the public records law; otherwise, all material subject to the rules would be public record and could be available to the defendant by that route.

> The Rules of Civil Procedure, however, retain almost their full scope even if they are not held to create an implicit exception to the public records law. Most civil litigants are not governments, and therefore, even if government attorney work product is accessible under the public records law, the work product of attorneys for private litigants remains exempt from discovery or any other form of access. There remains, that is, plenty of purpose for the discovery rules in civil litigation even if those rules do not protect government litigants.

*Public Records* 127.

In addition to these policy considerations, we note that the decision in *Piedmont* predated the Legislature's enactment of N.C. Gen. Stat. § 132-1.4, exempting most law enforcement records from public inspection and including the Chapter 15A criminal discovery protections addressed in issue II, C. *Public Records* 126. It thus appears that, faced with the implications of the *Piedmont* holding, the

McCORMICK v. HANSON AGGREGATES SOUTHEAST, INC.

[164 N.C. App. 459 (2004)]

Legislature chose to codify an exception to the Public Records Act for documents falling within the scope of the criminal discovery rules, *see* N.C.G.S. § 132-1.4(h)(1), but not for documents within the scope of civil discovery. This interpretation of the legislative intent underlying the Public Records Act is further bolstered by the fact that the Legislature included only a limited attorney-client privilege exception, but no work product exception in the Public Records Act. *See* N.C.G.S. § 132-1.1(a). Consequently, we conclude that the City Attorney's work product was subject to disclosure under the Act,[5] unless, of course, the relevant documents are independently exempted by virtue of the criminal investigation exception. Thus, not only was the City Attorney not entitled to greater protections than granted by the trial court's order, but the trial court erred in granting the City Attorney even limited work product protection.

## Conclusion

Accordingly, the trial court's order is reversed with respect to its ruling on work product. We further remand this case to the trial court (1) to conduct an *in camera* review to determine whether materials withheld by the City Attorney are subject to the criminal investigation exception and (2) for a consideration of and ruling on the City Attorney's documents consistent with the provisions of section 132-1.1(a) on privilege.

We have reviewed the parties' remaining arguments on appeal and find them to be without merit.

Reversed and remanded.

Judges TIMMONS-GOODSON and ELMORE concur.

---

5. We acknowledge that this Court has previously stated that "it would be illogical to allow plaintiff to circumvent the rules of discovery in a civil context through the use of the Public Records Act." This statement, however, was made in relation to a case involving a condemnation action in which the plaintiff had asked for and was denied discovery under the Public Records Act and the civil discovery rules, did not appeal that ruling, and later made an independent public records request. *Shella v. Moon*, 125 N.C. App. 607, 610, 481 S.E.2d 363, 365 (1997). That case thus presented a situation in which the trial court had already denied the plaintiff's right to disclosure under the Public Records Act and the plaintiff sought to get a second bite at the apple, and is therefore distinguishable from the facts of the case currently before this Court.