STATE OF NORTH CAROLINA v. JOHN EDDIE BURNEY

No. 48

(Filed 7 April 1981)

**1. Criminal Law §§ 29, 91.6- denial of continuance to obtain additional psychiatric evaluation**

   The trial court did not err in the denial of a motion for continuance to permit defendant to obtain an evaluation by another psychiatrist because the report of the psychiatrist who found defendant capable of standing trial contained a statement that the psychiatrist was "unable to evaluate satisfactorily judgment and insight because additional information about his present situation is not available" where such statement related to the defendant's mental status upon admission to the mental health facility for observation and did not relate to defendant's capacity to stand trial.

**2. Constitutional Law § 32— right to public trial — exclusion of all but certain persons from courtroom**

In this prosecution for first degree rape of a child of 12 years of age or less who was at least 4 years younger than defendant, the constitutional right of defendant to a public trial was not violated by the court's order entered pursuant to G.S. 15-166 that, during the testimony of the 7 year old victim, the courtroom be cleared of all persons except defendant, defendant's family, defense counsel, defense witnesses, the prosecutor, the State's witnesses, officers of the court, members of the jury, and members of the victim's family. Art. I, §§ 18 and 24 of the N. C. Constitution; Sixth Amendment to the U.S. Constitution.

**3. Criminal Law § 76.8— admissibility of incriminating statements**

The trial court properly denied defendant's motion to suppress incriminating statements made by him while in custody where the court made findings based on competent *voir dire* evidence that defendant was advised of his *Miranda* rights before he was questioned; defendant fully understood his constitutional rights, including his right to remain silent and to have counsel; and defendant freely, knowingly, intelligently and voluntarily waived his constitutional rights and made a statement to police officers.

APPEAL by defendant from judgment of *Lamm, J.*, entered at the 12 May 1980 session of RICHMOND Superior Court.

Upon a plea of not guilty defendant was tried on a bill of indictment, proper in form, which charged him with the first-degree rape of Sabrina Ann McDonald, a child of the age of 12 years or less and who was at least 4 years younger than defendant.

Evidence presented by the state is summarized in pertinent part as follows:

On 17 March 1980, defendant, age 26, spent the night with his girlfriend, Elizabeth McDonald, in her home. After dressing her 7 year-old daughter, Sabrina, for school, Mrs. McDonald left for work around 6:00 a.m. Defendant remained at the house with Sabrina and the other McDonald children. After Mrs. McDonald left the house, defendant went to Sabrina's room and had vaginal intercourse with her.

That evening, Sabrina told her mother about the assault. She was then taken to the emergency room of Richmond Memorial Hospital where she was examined. The examination revealed that the child was suffering from a discharge indicative of infection and she was treated for gonorrhea. Although vaginal smears proved negative, tests performed on the child's underclothing disclosed the presence of spermatozoa.

State v. Burney

Defendant made incriminating statements to the police which were reduced to writing. While defendant denied having intercourse with Sabrina, he admitted engaging in acts which would constitute taking indecent liberties with a child.

Although defendant did not testify, he did present evidence which tended to show that while he was treated for gonorrhea on 25 January 1980, he did not have either that disease or syphilis on 20 March 1980, two days after the alleged assault.

The jury returned a verdict finding the defendant guilty of first-degree rape. From judgment imposing a life sentence, defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General J. Chris Prather, for the state.*

*Richard G. Buckner for defendant appellant.*

BRITT, Justice.

[1] By his first assignment of error defendant contends the trial court committed prejudicial error in denying his motion for a continuance of the trial. This assignment has no merit.

On 21 March 1980 defendant was found to be indigent and Mr. Buckner was appointed to represent him. On 2 April 1980, Judge Collier, upon motion of defendant, ordered that he be committed pursuant to G.S. § 15A-1002 (1978 & Int. Supp. 1980) to Dorothea Dix Hospital for observation and treatment for a period necessary to determine defendant's "capacity to proceed", but in no event was this period to exceed 60 days. Judge Collier further ordered that a copy of the hospital's report concerning defendant be forwarded to defendant's attorney.

Prior to trial[1] defendant moved for a continuance on the ground that a copy of the hospital's report had not been sent to his attorney as had been ordered by Judge Collier. The trial judge informed defense counsel that he had received a copy of the report that day and would be glad to furnish him a copy of it. Counsel stated that he felt that he was entitled to an opportunity to study the report at length, and to have defendant's own experts examine it.

---

[1] The record does not disclose the date on which defendant moved for a continuance. We assume the motion was made at the session at which defendant was tried.

State v. Burney

Upon inquiry from the court, counsel stated that he had been informed previously that the report was in the clerk's office in a sealed envelope addressed to the presiding judge. He further stated that the clerk had suggested that he ask the presiding judge for a copy. Before ruling on the motion for a continuance, the court gave counsel time to read the report and go over it with defendant.[2]

Thereafter, the court heard further argument on the motion for a continuance. Defense counsel pointed out to the court that the examining physician had noted in the report that "I am unable to evaluate satisfactorily judgment and insight because additional information about his present situation is not available." It was the position of defense counsel that the statement in the report justified the granting of a continuance so that defendant could obtain an evaluation by another psychiatrist.

Before ruling on the motion to continue, the trial court directed the attention of defense counsel to the conclusion reached by Dr. Bob Rollins, a psychiatrist at Dorothea Dix Hospital who authored the report in question. It was the physician's opinion that "Mr. Burney is capable of proceeding with trial, that he has an understanding of his legal situation, and he is able to cooperate with his Attorney."[3] The court concluded that Dr. Rollins had reached a conclusion regarding defendant's capacity to stand trail and that there was nothing in the report which would tend to show that the doctor had an insufficient basis upon which to form an opinion.

Ordinarily, the granting or denial of a motion to continue is within the discretion of the trial judge. *E.g., State v. McFadden,* 292 N.C. 609, 234 S.E.2d 742 (1977). However, when the motion is based on a right guaranteed by the federal or state constitution, the question presented is one of law and is subject to review on appeal. *Id.* Whether a defendant bases his appeal upon an abuse of judicial discretion or upon a denial of his constitutional rights, for him to be entitled to a new trial because his motion to continue was not allowed, he must show both that there was error in the denial and that he was prejudiced thereby. *E.g., State v. Robinson,* 283 N.C. 71, 194 S.E.2d 811 (1973).

[2] While we cannot justify the hospital's failure to send defendant's counsel a copy of the report as ordered by Judge Collier, we must note that with a minimum of effort counsel could have obtained a copy of the report sent to the presiding judge.

[3] The report is not made a part of the record on appeal. The portions quoted by defense counsel and the trial judge constitute all of the report that we have before us.

State v. Burney

We hold that defendant has failed to establish that the trial court committed prejudicial error. First, the statement in the report by Dr. Rollins that he was unable to evaluate satisfactorily defendant's judgment and insight because additional information about defendant's situation was not then available does not speak to defendant's capacity to stand trial. Defendant was committed to Dorothea Dix Hospital for the limited purpose of assessing his capacity to proceed with trial. *See* G.S. § 15A-1002 (1978 & Int. Supp. 1980). That question turns upon whether by reason of mental defect or illness the defendant was unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings against him, or to assist in his defense in a rational or reasonable manner. G.S. § 15A-1001 (1978). The record reflects that the attorney for the defendant agrees with the assessment of the trial judge that the observation in question by Dr. Rollins was in regard to defendant's mental status upon admission to the facility. The pertinent time in regard to capacity is that of trial, conviction, sentencing, or punishment, not that of admission to an appropriate facility for observation and treatment. *Id.* Second, due to defendant's failure to include the hospital report as part of the record on appeal, we are unable to consider its full text. It is incumbent upon the appellant to ensure that the record is properly made up and transferred to the court. *State v. Atkinson*, 275 N.C 288, 167 S.E.2d 241 (1969), *death sentence vacated*, 403 U.S. 948 (1971).

**[2]** By his second assignment of error, defendant contends the trial court committed prejudicial error in granting the state's motion to exclude all but certain persons from the courtroom while the alleged victim gave her testimony. We find no merit in the assignment.

Prior to the introduction of evidence, the state moved, pursuant to G.S. § 15-166 (Cum. Supp. 1979), that all but certain persons be removed from the courtroom during the testimony of the 7 year-old child. Defendant objected, and, after hearing arguments from the district attorney and defense counsel, the court found as a fact that defendant was charged with the first-degree rape of a child of 12 years of age or less, who is at least 4 years younger than defendant. Invoking its discretion under G.S. § 15-166, the court ordered that during the testimony of Sabrina the courtroom be cleared of all persons except defendant and his family, his attorney, defense

witnesses, the assistant district attorney, the state's witnesses, officers of the court, the members of the jury, and the members of the child's family.

G.S. § 15-166 provides:

> In the trial of cases for rape and of or a [sic] sex offense or attempt to commit rape or attempt to commit a sex offense, the trial judge may, during the taking of the testimony of the prosecutrix, exclude from the courtroom all persons except the officers of the court, the defendant and those engaged in the trial of the case.

Although the action of the trial court was authorized by the quoted statute, defendant argues that the action violated Article I, Sections 18 and 24, of the state constitution, as well as the sixth amendment to the United States Constitution.[4] This argument is not persuasive.

Defendant initially directs this court to our decision in *State v. Yoes*, 271 N.C. 616, 157 S.E.2d 386 (1967). *Yoes* was a rape case in which we held that defendant's right to a public trial had not been violated by the action of the trial court in excluding bystanders from the courtroom during the testimony of the prosecutrix. Defendant attempts to distinguish *Yoes* from the case *sub judice* by pointing out that representatives of the press had not been excluded in that case. If this were a first amendment case, that distinction may have been entitled to more consideration on appeal. This case, however, invokes defendant's personal assertion of his right to a public trial as guaranteed by the state and federal constitutions. The court's holding in *Yoes* was not based upon the presence in the courtroom of members of the press. It instead, was grounded upon the fact that members of his family were allowed to remain in the courtroom at all times, even during the testimony of the prosecuting witness. In that regard, it appears that more people were allowed to remain in the courtroom during Sabrina's testimony than was the case in *Yoes*.

---

[4] Section 18 of Article I of the North Carolina Constitution requires that "[a]ll courts shall be open . . . ." Section 24 of the same Article provides that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court . . ." The Sixth Amendment of the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, . . . ."

State v. Burney

Defendant does not rely solely upon *State v. Yoes, supra,* in arguing that the trial court committed prejudicial error. Instead, defendant directs our attention to a line of cases from the United States Supreme Court which involves closure of the courtroom: *Richmond Newspapers, Inc. v. Virginia,* \_\_\_ U.S. \_\_\_, 65 L. Ed.2d 973, 100 S. Ct. 2814 (1980); *Gannett Co. v. DePasquale,* 443 U.S. 368, 61 L. Ed.2d 608, 99 S. Ct. 2898 (1979); *In re Oliver,* 333 U.S. 257, 92 L. Ed. 682, 68 S. Ct. 499 (1948). We conclude that defendant's reliance upon these cases is misplaced.

*Oliver* involved the application of a Michigan statute which authorized state circuit judges to sit as one-man grand juries and to exercise the customary powers of grand juries, including the power to commit a witness for contempt. In *Oliver,* a Michigan circuit judge invoked his powers under the statute and summarily committed a witness for contempt because of an alleged inconsistency between his testimony and that of at least one other witness. The entire proceeding was in secret and was without the presence of any members of the public whatsoever. The precise issue involved in *Oliver* was not the secrecy of the grand jury proceeding. Rather, the decision turned upon the Supreme Court's concern with the right of a criminal defendant to a public trial where guilt and punishment are the relevant questions at issue as opposed to the probable cause inquiry of the grand jury. In reversing the action of the Michigan Supreme Court affirming the entry of the commitment order, the Supreme Court grounded its decision on two bases. First, the entire proceeding was in complete secrecy. This secrecy even extended to denying petitioner's attorney access to him in jail. Second, the nature of the proceeding denied to petitioner the right to have a reasonable opportunity to defend himself against an accusation of false and evasive swearing.

Neither prong of the *Oliver* decision applies to the facts of the present case. First, the trial here was not in complete secrecy. The proceedings were open throughout with the exception of the time at which Sabrina testified. It was only at that point that the courtroom was cleared of spectators and members of the press. Even then, the proceedings remained open to members of certain identifiable groups, including the witnesses for defendant and members of defendant's family. Second, there is no indication in the record that the ability of defendant to present a defense in his own behalf was in any way inhibited by the conduct of the trial judge. The facts of the

present case do not establish that access to the proceedings was denied to the public. Instead, it is clear that access to the courtroom was restricted to the members of identifiable groups for only a small segment of the overall proceeding.[5]

*Gannett* was a murder case from New York in which the defendants sought an order barring the press and members of the general public from attending a pretrial hearing on their motion to suppress certain evidence. The state did not oppose the motion, and the trial court granted it. The publisher of a local newspaper challenged the action of the court. In upholding the action of the trial judge, the United States Supreme Court held that the press and members of the general public have no constitutional right independent of that of an accused's sixth amendment right to a public trial to insist upon access to a pretrial judicial proceeding in a criminal case. Speaking for the majority, Mr. Justice Stewart observed that even with respect to actual criminal trials, the tradition of publicity had not been universal, 443 U.S. at 388-89 n. 19, 61 L. Ed.2d at 626, 99 S. Ct. at 2909-10. The majority opinion then pointed specifically to instances where members of the public have been excluded from the courtroom in cases involving violent crimes against minors. *See, e.g., Geise v. United States*, 262 F. 2d 151 (9th Cir. 1958), *cert. denied*, 361 U.S. 842 (1959); *Hogan v. State*, 191 Ark. 437, 86 S.W.2d 931 (1935); *Beauchamp v. Cahill*, 297 Ky. 505, 180 S.W.2d 423 (1944). That is precisely the situation with which we are now confronted in the present case. Furthermore, even if it were not

---

[5] In this regard, we find the observation of the California Supreme Court in the case of *People v. Swafford*, 65 Cal. 223, 3 P. 809 (1884), to be pertinent. In *Swafford*, the trial court had excluded all observers from the courtroom except the judge, jurors, witnesses, and persons connected with the case. On appeal, the defendant argued that the trial court had no jurisdiction to try him other than publicly. The Supreme Court of California disagreed, noting that

The word 'public' is used in the clause of the constitution in opposition to secret. As said by Judge Cooley, it is not meant that every person who sees fit shall, in all cases, be permitted to attend criminal trials. 'The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with, and not unjustly condemned; and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility, and to the importance of their functions; and the requirement is fairly observed, if, without partiality or favoritism, a reasonable portion of the public is suffered to attend, notwithstanding that those persons whose presence would be of no service to the accused, and who would only be drawn thither by a prurient curiosity, are excluded altogether.'

State v. Burney

for the observation in dictum by Mr. Justice Stewart, we are compelled to state that unlike the situation in *Gannett* there was no general exclusion of the public from the proceedings below. Members of the families of defendant and the victim, as well as witnesses for both sides, were allowed to remain in the courtroom during the child's testimony. Furthermore, the exclusion did not apply to the entire proceeding but only to the testimony of a 7 year-old child. In other words, in the case *sub judice*, there was a greater degree of access than that which was upheld in *Gannett.*

In *Richmond Newspapers*, a defendant who was on trial for the fourth time for murder moved that the trial be closed to the public. The prosecutor informed the court that he had no objection to the motion. Thereupon, the trial judge ordered that the courtroom be cleared of all persons except the witnesses when they testified. A newspaper publisher challenged the order. Although seven members of the United States Supreme Court were unable to agree upon a majority opinion, they did concur in the decision that the court order violated the right of access of the public and the press to criminal trials. Defendant argues that *Richmond Newspapers* controls the case at bar by pointing to the words of Mr. Chief Justice Burger who noted that "[A]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." _____ U.S. at _____, 65 L. Ed.2d at 992, 100 S. Ct. at 2830. The Chief Justice had earlier observed that the trial court had made no findings to support closure; that no inquiry had been made as to whether alternative solutions would have met the need to assure fundamental fairness; and that there was no recognition of any right of the press or the general public to attend the trial. _____ U.S. at _____, 65 L. Ed.2d at 992, 100 S.Ct. at 2829. The decision in *Richmond Newspapers* does not entitle defendant to a new trial for several reasons.

First, defendant is attempting to fashion support for a sixth amendment claim from a case which has manifest first amendment underpinnings. Defendant cannot demand a new trial upon the assertion of an alleged violation of the constitutional rights of a third person under these particular facts. *Compare United States v. Payner*, _____ U.S. _____, 65 L. Ed.2d 468, 100 S. Ct. 2439 (1980). Second, the trial judge found as a fact that defendant was charged with the first-degree rape of a girl under the age of 12. It is implicit in these findings that the state would offer her testimony as evidence. This consideration alone would satisfy the language upon

which defendant relies. Obviously, rape and other sexual offense cases involve matters of the most sensitive and personal nature. These considerations are compounded when a child of tender years is involved and is called upon to testify in strange surroundings before unknown persons as to matters the child may not fully understand. This court has historically recognized the delicate sensitivities which are inherent in prosecutions of sexual offenses. *See State v. Pearson*, 258 N.C. 188, 128 S.E.2d 251 (1962). It is this delicacy, as well as the age of the child, which makes out a showing of an overriding interest to justify closure. Third, unlike *Richmond Newspapers*, the present case did not involve a closure of all trial proceedings. It involved the closing of the courtroom for only a limited period of time. In summary, *Richmond Newspapers* does not serve to support defendant's demand that he be awarded a new trial because a trial judge in the interest of the fair administration of justice may impose reasonable limitations upon the access of the public and the press to a criminal trial. ____ U.S. at ____ n. 18, 65 L. Ed.2d at 992, 100 S. Ct. at 2830. We find no violation of that standard in the present case. Even if we were to perceive such a violation, such a violation, on the facts of the present case, would be harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 17 L. Ed.2d 705, 87 S. Ct. 824 (1967).

**[3]**   By his third and final assignment of error, defendant contends the trial court erred in denying his motion to suppress as evidence incriminating statements made by him. This assignment is without merit.

It is the rule in this jurisdiction that when the state attempts to offer into evidence a defendant's in-custody statements, made in response to questioning by police and in the absence of counsel, the state must affirmatively show not only that the defendant was fully informed of his rights but also that he knowingly and intelligently waived his right to counsel. *State v. Siler*, 292 N.C. 543, 234 S.E.2d 733 (1977); *State v. Biggs*, 289 N.C. 522, 223 S.E.2d 371 (1976). "[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Miranda v. Arizona*, 384 U.S. 436, 479, 16 L. Ed.2d 694, 726, 86 S. Ct. 1602, 1630 (1966).

In compliance with this rule the trial court conducted a lengthy *voir dire* hearing at which Officers Snead and Jarrell testified.

Defendant offered no evidence at the voir dire. Following the hearing, the court made findings of fact and conclusions of law including findings and conclusions that before being questioned defendant was advised of his *Miranda* rights; that he fully understood his constitutional rights, including his right to remain silent and to have counsel; and that he freely, knowingly, intelligently and voluntarily waived his constitutional rights and made a statement to the police officers. The court denied defendant's motion to suppress and admitted into evidence the statements allegedly made by him.

It is well-settled that after conducting a voir dire hearing, a trial judge's findings of fact, if they are supported by competent evidence, are conclusive and binding on the appellate courts. *E.g.,* *State v. Thompson,* 287 N.C. 303, 214 S.E.2d 742 (1975), *death sentence vacated,* 428 U.S 908 (1976); *State v. Pruitt,* 286 N.C. 442, 212 S.E.2d 92 (1975). In the case at hand, the trial judge's findings are fully supported by competent evidence, and the findings support the conclusions of law.

We conclude that defendant received a fair trial, free from prejudicial error.

No error.