A. RON VIRMANI, MD, PLAINTIFF v. PRESBYTERIAN HEALTH SERVICES CORP., DEFENDANT; IN RE KNIGHT PUBLISHING COMPANY D/B/A THE CHARLOTTE OBSERVER AND JOHN HECHINGER

No. COA96-1051

(Filed 18 November 1997)

1. **Hospitals and Medical Facilities or Institutions § 40 (NCI4th); Records of Instruments, Documents, or Things § 1 (NCI4th)— hospital staff privileges—peer review materials—introduction in civil proceeding—public records— court's right to deny public access**

Even if physician peer review materials became public records under N.C.G.S. Chapter 132 once they were introduced by defendant hospital as evidence in an action regarding a physician's hospital staff privileges, the trial court was not divested of its inherent supervisory power over court records and proceedings and was not absolutely required by Chapter 132 to allow unfettered public access to the medical peer review committee materials. N.C.G.S. § 132-1.

2. **Courts § 131 (NCI4th)— closing court proceedings—sealing records—not prohibited by statute**

The statute which prevents the sealing of records "required to be open to public inspection" and prohibits a court from

restricting the publication of reports regarding matter presented "in open court," N.C.G.S. § 7A-276.1, does not prohibit a trial court from closing the court proceedings and sealing the records.

**3. Constitutional Law § 128 (NCI4th)— closing court proceedings—sealing records—constitutional limitations**

A trial court's discretion to close court proceedings and to seal court records is subject to constitutional limitations.

**4. Constitutional Law § 128 (NCI4th); Hospitals and Medical Facilities or Institutions § 40 (NCI4th)— medical review committee records—shielding statute—constitutional right of access by public**

The General Assembly's enactment of the statute that shields hospitals and professional health services providers from third party attempts to acquire medical review committee records and materials in the context of a civil action, N.C.G.S. § 131E-95, cannot supercede the constitutional rights of access held by the public.

**5. Constitutional Law § 128 (NCI4th); Hospitals and Medical Facilities or Institutions § 40 (NCI4th)— hospital staff privileges—civil court proceedings—open courts provision—presumption of right of public access**

The open courts provision of Art. I, § 18 of the North Carolina Constitution creates a strong presumption that the public, including a newspaper, has a right of access to civil court proceedings regarding the suspension of a physician's hospital staff privileges, including videotapes and transcripts of the proceedings and medical peer review committee records and materials considered by the court. However, there are some circumstances when a court may close civil proceedings and seal court records.

**6. Constitutional Law § 128 (NCI4th)— closing court proceedings—sealing records—consideration by court—presumption of open access**

In deciding whether to close court proceedings or seal court records, a court must balance competing interests and policies at stake in light of the particular circumstances of the case but must give substantial weight to the presumption of open access. A court must keep in mind the nature of the protection provided by the open courts provision, including the protection of the court's own integrity as an institution, and the relationship the open

VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.

[127 N.C. App. 629 (1997)]

courts clause has to the interests protected by other clauses of Art. I, § 18 providing court access rights to litigants. The court should determine whether any of the competing interests and policies are so compelling that they overwhelmingly outweigh the strong presumption that court proceedings and records should be open to the public, and any closure or sealing order should be exceedingly narrow in scope.

**7. Constitutional Law § 128 (NCI4th); Hospitals and Medical Facilities or Institutions § 40 (NCI4th)— hospital staff privileges—civil action—closing to public—sealing of peer review materials—erroneous orders**

The trial court's orders closing the court proceedings and sealing peer review committee materials in an action regarding suspension of a physician's hospital staff privileges constituted reversible error since the public policy interest in the confidentiality of medical peer review committee records and materials is counterbalanced by the public's interest in being fully informed about plaintiff physician's challenge to defendant hospital's assessment of his competency and suspension of his staff privileges; there is a strong presumption of open access to traditionally open court proceedings; the peer review materials were voluntarily introduced by defendant hospital; and public access to these materials does not significantly impede defendant's right of access to the courts.

**8. Constitutional Law § 128 (NCI4th)— hospital staff privileges—motion to keep proceedings open—summary denial—violation of open courts provision**

The trial court erred by summarily denying a newspaper's motion to keep open to the public proceedings regarding the suspension of a physician's hospital staff privileges. Under Art. I, § 18 of the North Carolina Constitution, the trial court was required (1) to furnish the newspaper a meaningful opportunity to be heard on its motion, and (2) to state reasons for its ruling supported by specific findings.

**9. Parties § 61 (NCI4th)— permissive intervention—newspaper—challenge to closing proceedings to public—common question of law or fact**

A newspaper met the requirement of a common question of law or fact for permissive intervention under Rule 24(b) in an action regarding the suspension of a physician's hospital staff

VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.

[127 N.C. App. 629 (1997)]

privileges where the newspaper challenged the validity of orders closing court and sealing medical peer review materials in the main action in response to defendant hospital's motion. N.C.G.S. § 1A-1, Rule 24(b).

Upon writ of certiorari allowed through petition by Knight Publishing Company d/b/a The Charlotte Observer and John Hechinger from orders entered 24 January 1996 by Judge Marvin K. Gray, 9 February 1996 by Judge James U. Downs, 10 May 1996 by Judge Marcus L. Johnson, and 15 May 1996 and 22 May 1996 by Judge James U. Downs in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 May 1997.

*No brief filed for plaintiff, A. Ron Virmani, MD.*

*Johnston, Taylor, Allison & Hord, by Patrick E. Kelly and Greg C. Ahlum, for defendant.*

*Waggoner, Hamrick, Hasty, Monteith and Kratt, PLLC, by John H. Hasty and G. Bryan Adams, III, for appellants Knight Publishing Company d/b/a The Charlotte Observer and John Hechinger.*

*Everett Gaskins Hancock & Stevens, by Hugh Stevens and C. Amanda Martin, on behalf of The North Carolina Press Association and The News and Observer Publishing Company, amicus curiae.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Julian D. Bobbitt, Jr., on behalf of The North Carolina Hospital Association and The North Carolina Medical Society, amicus curiae.*

McGEE, Judge.

This appeal presents the issue of whether the trial court erred in closing courtroom proceedings to the public and in sealing various documents presented to the court in a civil action filed by Dr. Ron Virmani (Dr. Virmani) against Presbyterian Health Services Corp. (Presbyterian) regarding suspension of Dr. Virmani's medical staff privileges at Presbyterian Hospital in Charlotte.

Shortly after Dr. Virmani filed this action, Presbyterian, in various pre-trial motions, moved to seal confidential medical peer review committee records and materials and to close court proceedings in

which these records and materials were introduced or discussed. The motions were granted pursuant to N.C. Gen. Stat. § 131E-95 in various court orders. On 3 April 1996, *The Charlotte Observer* published a story by reporter John Hechinger about Dr. Virmani based on documents Hechinger obtained from the court file. The parties dispute whether these documents had been ordered sealed. On 7 May 1996, Hechinger attended a calendared hearing on Dr. Virmani's motion for summary judgment and on Presbyterian's motions to dismiss and for summary judgment. Early in the hearing, Presbyterian's attorneys moved to close the courtroom pursuant to G.S. § 131E-95 because they anticipated discussion of confidential medical peer review committee materials. The trial court ordered portions of the hearing concerning the medical peer review materials closed to the public. Prior to discussion of the peer review materials, the trial court asked Hechinger to identify himself. Hechinger answered, objected to closing of the hearing, and asked for a continuance in order that he could obtain counsel to argue against closure. The court noted his objection and denied the continuance. Hechinger complied with the closure by exiting the courtroom.

The next morning an attorney for Knight Publishing d/b/a The Charlotte Observer and Hechinger (jointly Knight) appeared before the trial court and presented written motions for intervention and to open the proceedings to the public and the news media. The trial court summarily denied the motions without hearing argument and without making findings of fact or conclusions of law. Presbyterian's attorneys were not present; however, Knight's attorney served a copy of the motions on the law partner of an attorney representing Presbyterian who was present for another matter.

In an order entered 10 May 1996, the trial court referenced Knight's motions and effectively, although not explicitly, denied the motions. Subsequent orders were entered sealing videotapes, tapes, and transcripts of those portions of the previously closed court proceedings in which medical peer review committee and physician credentialing matters were discussed, presented or argued. Knight filed a notice of appeal and petitions for various extraordinary writs including a petition for writ of certiorari with this Court.

By order entered 24 July 1996, our Court allowed the writ of certiorari as to the orders that (1) sealed confidential information and medical peer review committee records and materials that were considered by the court and/or were in the court file, (2) closed the court

proceedings dealing with confidential medical peer review commit-
tee records and materials, (3) sealed portions of transcripts and
videotapes of the court proceedings, and (4) denied Knight's motions
to intervene and to open court proceedings.

## PUBLIC RECORDS

We first address what right Knight has to attend courtroom pro-
ceedings and to review the sealed records in this civil action. Knight
asserts access rights under N.C. Gen. Stat. §§ 132-1 and 7A-276.1,
Article I, § 18 of our North Carolina Constitution, and the First
Amendment of the United States Constitution.

Knight contends the peer review documents and testimony
regarding the peer review process are public records under G.S.
§ 132-1. At common law, citizens have a "right to inspect and copy
public records and documents, including judicial records and docu-
ments." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597,
55 L. Ed. 2d 570, 579 (1978); *see also News and Observer v. State; Co.
of Wake v. State; Murphy v. State,* 312 N.C. 276, 280, 322 S.E.2d 133,
136 (1984). However, this right is not absolute. *Nixon,* 435 U.S. at 598,
55 L. Ed. 2d at 580; *News and Observer,* 312 N.C. at 280, 322 S.E.2d at
136. The United States Supreme Court has stated:

> Every court has supervisory power over its own records and files,
> and access has been denied where court files might have become
> a vehicle for improper purposes. For example, the common law
> right of inspection has bowed before the power of a court to
> insure that its records are not "used to gratify private spite or pro-
> mote public scandal" through the publication of "the painful and
> sometimes disgusting details of a divorce case" . . . Similarly,
> courts have refused to permit their files to serve as reservoirs of
> libelous statements for press consumption . . . or as sources of
> business information that might harm a litigant's competitive
> standing. . . .

*Nixon,* 435 U.S. at 598, 55 L. Ed. 2d at 580.

Access to public records in this State is governed by Chapter 132,
which provides for liberal access. *See* G.S. § 132-1 *et. seq.; News and
Observer,* 312 N.C. at 281, 322 S.E.2d at 137. Under Chapter 132 "pub-
lic records" are those types of documents enumerated in G.S. § 132-1
"made or received pursuant to law or ordinance in connection with
the transaction of public business by any agency of North Carolina
government or its subdivisions." G.S. § 132-1 (1995). An "[a]gency of

North Carolina government or its subdivisions" is defined broadly in the statute as "every public office, public officer or official (State or local, elected or appointed), institution, board, commission, bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government." G.S. § 132-1. The breadth of this definition suggests it is inclusive of our state courts. In addition, in *State v. West*, 31 N.C. App. 431, 448, 229 S.E.2d 826, 835-36 (1976), *aff'd*, 293 N.C. 18, 235 S.E.2d 150 (1977), an action was brought by the State of North Carolina to recover property of the State, being bills of indictment filed in a North Carolina colonial district superior court in 1767 and 1768. Our Court held the bills of indictment were public records. *West*, 331 N.C. App. at 448, 229 S.E.2d at 835-36. "The trial court having found that the bills of indictment were docketed in the Salisbury District Superior Court, it follows without question that they became public records . . . ." *Id.* Thus, the term "public records" appears to include "all documents, papers . . . or other documentary material," as defined in G.S. § 132-1, "made or received pursuant to law or ordinance in connection with the transaction of public business" by any North Carolina court.

However, here the trial court orders were based on G.S. § 131E-95. This statute shields hospitals and professional health services providers from third party attempts to acquire medical review committee records and materials in the context of a civil action. Knight acknowledges that G.S. § 131E-95 expressly provides these records and materials are not public records within the meaning of G.S. § 132-1(b). However, Knight asserts that, in spite of this statute, these records and materials became public records once they were introduced by defendant as evidence in the public forum of this civil action. G.S. § 131E-95 does not explicitly address the impact of a hospital's or professional health services provider's decision to present medical review committee materials as evidence in a civil action. In fact, the legislative decision reflected in G.S. § 131E-95 to protect professional health services providers and hospitals from discovery or introduction of this material into evidence is based on the implicit assumption that the material becomes public once it is introduced into a court proceeding.

[1] In a case addressing a similar issue, our Supreme Court held that records exempt from public records status pursuant to N.C. Gen. Stat. § 114-15 do not continue to be exempt once they become records of another state agency whose records are public under

G.S. § 132-1. *News and Observer Publishing Co. v. Poole*, 330 N.C. 465, 474, 412 S.E.2d 7, 12-13 (1992). Of course, here the medical peer review committee materials were not actually made available to the public as occurred in *Poole* because Presbyterian presented materials to the court in conjunction with the orders closing the proceedings and sealing the record. However, even if the peer review materials became public records under Chapter 132 once they were introduced by Presbyterian as evidence in this action, this occurrence did not divest the trial court issuing the orders in this action of its inherent supervisory power over court records and proceedings and it was not absolutely required by Chapter 132 to allow unfettered public access to the medical peer review committee materials.

## STATUTORY PROVISION

[2] Knight further asserts N.C. Gen. Stat. § 7A-276.1 prohibited the court from closing the court proceedings and sealing the records. We disagree. This statute provides:

> No court shall make or issue any rule or order banning, prohibiting, or restricting the publication or broadcast of any report concerning any of the following: any evidence, testimony, argument, ruling, verdict, decision, judgment, or other matter occurring in open court in any hearing, trial, or other proceeding, civil or criminal; and no court shall issue any rule or order sealing, prohibiting, restricting the publication or broadcast of the contents of any public record as defined by any statute of this State, which is required to be open to public inspection under any valid statute, regulation, or rule of common law. If any rule or order is made or issued by any court in violation of the provisions of this statute, it shall be null and void and of no effect, and no person shall be punished for contempt for the violation of any such void rule or order.

G.S. § 7A-276.1 (1995). This statute only prevents sealing of those records "required to be open to public inspection under any valid statute, regulation, or rule of common law." *See* G.S. § 7A-276.1. In addition, this statute only prohibits a court from restricting the publication of reports regarding matter presented "in open court." *See* G.S. § 7A-276.1. Thus, although court records may generally be public records under G.S. § 132.1, based on its inherent power to control court proceedings, a trial court may, in the proper circumstances, shield portions of court proceedings and records from public view subject to statutory and constitutional limitations.

## OPEN COURTS PROVISION

[3],[4] However, a trial court's discretion to close court proceedings and to seal records is subject to constitutional limitations. In addition, the court's application and consideration of G.S. § 131E-95 is not dispositive of Knight's rights because the General Assembly's enactment of G.S. § 131E-95 cannot supercede the constitutional rights of access held by the public. Acts of the General Assembly, to be valid and effective, must be enacted in conformity with both our federal and state constitutions. *See In re Advisory Opinion In re House Bill No. 65*, 227 N.C. 708, 713, 43 S.E.2d 73, 76 (1947); *Brumley v. Baxter*, 225 N.C. 691, 696, 36 S.E.2d 281, 284-95 (1945). Here, Knight does not assert that G.S. § 131E-95 is unconstitutional as written; rather, it contends the statute must not be applied or construed by the trial courts and by this Court in a manner which violates Knight's constitutional rights.

Knight contends Article I, § 18 of our North Carolina Constitution creates a presumption that all court proceedings, including the civil trial proceedings at issue here, are open to the public. Where the meaning of a constitutional provision is clearly expressed, it should be adopted; but, if doubtful, intention of those adopting the Constitution must be sought. *Elliott v. Board of Equalization*, 203 N.C. 749, 753, 166 S.E. 918, 921 (1932). "Inquiry must be had into the history of the questioned provision and its antecedents, the conditions that existed prior to its enactment, and the purposes sought to be accomplished by its promulgation." *Sneed v. Board of Education*, 299 N.C. 609, 613, 264 S.E.2d 106, 110 (1980). "The best way to ascertain the meaning of a word or sentence in the Constitution is to read it contextually and to compare it with other words and sentences with which it stands connected." *State v. Emery*, 224 N.C. 581, 583, 31 S.E.2d 858, 860 (1944).

> [A] constitution is intended to be a forward-looking document . . .; and where its terms will permit, is to be credited with a certain flexibility which will adapt it to the continuous growth and progress of the State. But when the Constitution provides how orderly progress may be fostered and advanced, and the process involves political rights reserved or expressly secured to the people, the courts will be careful not to encroach on that prerogative . . . .

*Purser v. Ledbetter*, 227 N.C. 1, 5-6, 40 S.E.2d 702, 706 (1946) (citations omitted). The Constitution should receive a liberal interpreta-

tion in favor of a citizen, especially with respect to those provisions which are designed to safeguard the liberty and security of the citizen in regard to both person and property. *State v. Harris*, 216 N.C. 746, 764-65, 6 S.E.2d 854, 866 (1940).

Article I, § 18 of the North Carolina Constitution provides: "Sec. 18. Courts shall be open. All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18. The open courts provision was added to the Declaration of Rights of our State Constitution in 1868 as Article I, § 35 (now Article I, § 18). *See* John V. Orth, *The North Carolina State Constitution* 54 (1993); N.C. Const. art. I, § 35 (1868); 5 Francis N. Thorpe, *The Federal and State Constitutions, Colonial Charters, and Other Organic Laws of the States, Territories, and Colonies now or heretofore forming The United States of America* 2803 (1909). The surviving records of the 1868 North Carolina Constitutional Convention reveal neither the origin of our open courts provision nor the framers' intent in adding it to the Declaration of Rights. *See Journal of the Constitutional Convention of the State of North Carolina At Its Session 1868* at 169-71, 213-16, 226-32 (Raleigh: Joseph W. Holden, Convention Printer, 1868) (1868 Journal); *see also* Joseph W. Holden, Convention Proceedings, *North Carolina Standard* (providing day-to-day coverage of convention proceedings). The changes made to this provision in the 1971 Constitution were stylistic, not substantive. Robert L. Farb, *The Public's Right to Attend Criminal Proceedings in North Carolina*, Administration of Justice Memoranda, February 1980, at 6 n.15; *cf.* Report of the North Carolina State Constitution Study Commission 30 (Raleigh 1968).

The committee that drafted the 1868 Declaration of Rights was chaired by David Heaton of Ohio, a lawyer who served in the Ohio Senate before he moved to North Carolina in 1863. *See* 1868 Journal at 169, 213; Max Williams, *David Heaton*, 3 Dictionary of North Carolina Biography 91 (William S. Powell ed., 1988). Some scholars have suggested that our open courts provision was copied from the nearly identical provision of the 1851 Ohio Constitution and/or from the 1838 Pennsylvania Constitution. *See* Farb, *supra*, at 6; Dillard S. Gardner, *The Proposed Constitution for North Carolina*, Popular Government, June 1934, at 4; *see also* Hugh T. Lefler & Albert R. Newsome, *The History of a Southern State: North Carolina* 490 (3rd ed. 1973).

VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.

[127 N.C. App. 629 (1997)]

The constitutions of thirty-eight states contain open courts or right to remedy provisions and twenty-two state constitutions require that their state courts be "open." William C. Koch, Jr., *Reopening Tennessee's Open Courts Clause: A Historical Reconsideration of Article I, Section 17 of the Tennessee Constitution*, 27 U. Mem. L. Rev. 333, 434-35 (1997). Many state constitutions contain some type of open courts provision *and* some type of right to remedy provision. *Cf. id.*

The U.S. Supreme Court, citing the writings of Sir Edward Coke and Blackstone, among others, has observed that English commentators on the common law assumed the common law rule was that the public could attend both civil and criminal trials. *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n. 15, 61 L. Ed. 2d 608, 625 n.15 (1979). The writings of Sir Edward Coke, 17th century English judge and legal writer, had a profound influence on the American colonists and on the development of state constitutions. *See* Koch, *supra*, at 363; Jack B. Harrison, *How Open Is Open? The Development of the Public Access Doctrine Under State Open Court Provisions*, 60 U. Cin. L. Rev. 1307, 1310-12 (1992). Coke wrote four volumes of *Institutes* which were among the few summaries of English law available in the American colonies. Koch, *supra*, at 364; Jonathan M. Hoffman, *By the Course of Law: The Origin of the Open Courts Clause of State Constitutions*, 74 Or. L. Rev. 1279, 1296 (1995). In his commentary on the first chapter of the Statute of Marlebridge (also Marlborough) in his *Second Institutes*, Coke expounded on this chapter's provision that "all persons, as well of high as of low estate, shall receive justice in the king's court." He comments on the meaning of "[i]n curia domini regis" (in the king's court) as follows:

> *In curia domini regis.* These words are of great importance, for all causes ought to be heard, ordered, and determined before the judges of the kings courts openly in the kings courts, whither all persons may resort; and in no chambers, or other private places: for the judges are not judges of chambers, but of courts, and therefore in open court, where the parties councell and attorneys attend, ought orders, rules, awards, and judgements to be made and given, and not in chambers or other private places, where a man may lose his cause, or receive great prejudice, or delay in his absence for want of defence. Nay, that judge that ordereth or ruleth a cause in his chamber, though his order or rule be just, yet offendeth he the law, (as here it appeareth) because he doth it not in court. . . Neither are causes to be heard

upon petitions, or suggestions and references, but *in curia domini regis.*

1 Edwardo Coke, *The Second Part of the Institutes of the Laws of England* 103-104 (London, E. & R. Brooke 1797); *see also Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 565 n.6, 65 L. Ed. 2d 973, 982 n.6 (1980) (plurality opinion) (discussing Coke's interpretation of the Statute of Marlborough and quoting his commentary on "[i]n curia domini regis").

State constitution open courts provisions also have historical roots in Coke's commentary on Chapter 29 of the 1225 Magna Carta in his *Second Institutes. See* Hoffman, *supra,* at 1284, 1295 n. 104. Hoffman asserts that a primary theme of Coke's interpretation of the Magna Carta was the integrity of the courts as protected by the Magna Carta's guarantee of an independent and impartial judiciary. *See* Hoffman, *supra,* at 1288. Coke's influence on the American colonies is reflected in the writings of William Penn, who drafted the *Fundamental Laws of West New Jersey* in 1676 and drafted the *Frame of Government of Pennsylvania—1682, see* Koch, *supra,* at 364-65, in which he combined a shorthand version of the open courts concept with the Magna Carta prohibition on the sale and delay of justice as follows: "[t]hat all courts shall be open, and justice shall neither be sold, denied nor delayed." *Cf. Frame of Government of Pennsylvania—1682, Laws Agreed Upon In England,* 5 Thorpe, *supra,* at 3060; 1 Coke, *supra,* at 45. Versions of this provision later became part of the Pennsylvania Constitution. *See* Koch, *supra,* at 367-68, 389-90 n.365. Section 26 of the 1776 Pennsylvania Constitution provided in pertinent part: ". . . All courts shall be open, and justice shall be impartially administered without corruption or unnecessary delay." 5 Thorpe, *supra,* at 3088.

As the West Virginia Supreme Court of Appeals has observed, many state constitutions similarly couple the command "all courts shall be open" with a clause conferring a right to remedy by due course of law and/or a clause guaranteeing administration of justice without sale, denial, or delay. *State ex rel. Herald Mail Co. v. Hamilton,* 267 S.E.2d 544, 548 (W.Va. 1980) (citing provisions from Pennsylvania, Kentucky, Ohio, Tennessee, and Vermont constitutions).

Placing emphasis on the history of the latter two clauses, some courts have concluded that the open courts clause only confers access rights to litigants but not to the public. Koch, *supra,* at 446

## VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.

[127 N.C. App. 629 (1997)]

(citing *State, Etc. v. Porter Superior Court*, 412 N.E.2d 748, 751 (Ind. 1980); *Katz v. Katz*, 514 A.2d 1374, 1379 (Pa. Super. Ct. 1986), *appeal denied*, 527 A.2d 542 (Pa. 1987)); *see also C. v. C.*, 320 A.2d 717, 728 (Del. 1974). However, many state courts agree that their open courts clauses provide the public with an independent right of access to court proceedings. *See* Koch, *supra*, at 446; *e.g.*, *Phoenix Newspapers, Inc. v. Superior Court*, 418 P.2d 594, 596-97 (Ariz. 1966) (relying on Arizona Constitution free speech clause but also citing Arizona Constitution open courts clause); *KFGO Radio, Inc. v. Rothe*, 298 N.W.2d 505, 510-11 (N.D. 1980), *limited by Dickenson Newspapers, Inc. v. Jorgensen*, 338 N.W.2d 72, 75-76 (N.D. 1983); *State ex rel. The Repository v. Unger*, 504 N.E.2d 37, 39-41 (Ohio 1986); *E. W. Scripps Company v. Fulton*, 125 N.E.2d 896, 899-903 (Ohio Ct. App.), *appeal dismissed*, 130 N.E.2d 701 (Ohio 1955), *but see In re T.R.*, 556 N.E.2d 439, 446-48 (Ohio) (holding Ohio Constitution open courts provision provides no greater protection than First Amendment of federal constitution), *cert. denied*, 498 U.S. 958, 112 L. Ed. 2d 396 (1990); *Oregonian Publishing Co. v. O'Leary*, 736 P.2d 173, 174-78 (Or. 1987); *Federated Publications, Inc. v. Kurtz*, 615 P.2d 440, 445 (Wash. 1980); *Cohen v. Everett City Council*, 535 P.2d 801, 802-04 (Wash. 1975); *Herald Mail*, 267 S.E.2d at 544, 548-49, 551-52 (W.Va. 1980); *see also State v. Copp*, 15 N.H. 212, 215 (1844) (stating "the right to have the courts open is the right of the public and not of the individual"). On this point, the West Virginia Supreme Court of Appeals stated:

> The uniform interpretation of the mandate that the courts "shall be open" by those state courts called upon to construe the provision in their constitutions is that this language confers an independent right on the public to attend civil and criminal trials, and not simply a right in favor of the litigants to demand a public proceeding.

*Herald Mail*, 267 S.E.2d at 548.

The United States Constitution does not contain an open courts provision. However, the United States Supreme Court has held the First Amendment creates a presumptive right of the public to attend certain criminal proceedings. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 6-13, 92 L. Ed. 2d 1, 9-13 (1986) (*Press-Enterprise II*); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 505-10, 78 L. Ed. 2d 629, 635-38 (1984) (*Press-Enterprise I*); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603-07, 73 L. Ed. 2d 248, 255-57

(1982); *Richmond Newspapers, Inc.*, 448 U.S. at 580-81, 65 L. Ed. 2d at 991-93 (plurality opinion). In *Press-Enterprise II*, the U.S. Supreme Court applied the twin tests of experience and logic in determining whether a First Amendment right of access attached to a California criminal preliminary hearing. *See Press-Enterprise II*, 478 U.S. at 8-13, 92 L. Ed. 2d at 9-13. The experience test requires evaluation of "whether the place and process have historically been open to the press and general public." *Id.* at 8, 92 L. Ed. 2d at 10. The logic test requires consideration of "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*

Although the United States Supreme Court has not rendered a decision on whether the public has a presumptive right to attend civil proceedings, the Supreme Court has noted that civil trials historically have been presumptively open to the public. *Gannett Co.*, 443 U.S. at 386 n.15, 61 L. Ed. 2d at 625 n.15; *see also Richmond Newspapers, Inc.*, 448 U.S. at 580 n.17, 65 L. Ed. 2d at 992 n.17 (plurality opinion). Several federal circuit courts have held that certain civil proceedings are presumptively open under the First Amendment. *See Stone v. University of Md. Medical System Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988); *Publicker Industries Inc. v. Cohen*, 733 F.2d 1059, 1070-71 (3rd Cir. 1984); *Matter of Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308-16 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1178-81 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100, 80 L. Ed. 2d 127 (1984); *Newman v. Graddick*, 696 F.2d 796, 800-01 (11th Cir. 1983). Although these courts stress the strength of the First Amendment presumption of access, they have refused to define this right of access as absolute. *See id.* "Where the First Amendment guarantees access . . . access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180 (applying First Amendment access standard articulated for criminal trials in *Press-Enterprise I*, 464 U.S. at 510, 78 L. Ed. 2d at 638, to a district court order sealing the court record of a civil rights action brought by a medical school professor).

Our appellate courts have not considered whether Article I, § 18 of our North Carolina Constitution gives the public a constitutional right of access to medical peer review committee records and materials considered by a trial court in a civil action or the right to be present in the courtroom during presentation and discussion of this material. This Court has held a statute which closed civil commit-

ment proceedings to the public was not unconstitutional under the First Amendment. *In re Belk*, 107 N.C. App. 448, 453, 420 S.E.2d 682, 685, *appeal dismissed and disc. review denied*, 333 N.C. 168, 424 S.E.2d 905 (1992). In declining to extend to civil commitment proceedings the First Amendment rights of access to criminal proceedings, our Court based its reasoning in part on the distinction that, prior to 1973, the civil commitment process, unlike traditional civil trials, did not require formal judicial hearings. *Id.* at 452, 420 S.E.2d at 684. Thus, the *Belk* Court did not decide in light of the historical tradition of open civil trials, whether the First Amendment creates a presumption of open civil trial proceedings. In *Belk*, this Court also held Article 1, § 18 does not create a constitutional right of the press and public to attend civil commitment proceedings. *See Belk*, 107 N.C. App. at 453, 420 S.E.2d at 685.

Prior decisions by the North Carolina Supreme Court contain statements that Article I, § 18 provides the public open access to our courts. *See State v. Burney*, 302 N.C. 529, 537, 276 S.E.2d 693, 698 (1981); *In re Nowell*, 293 N.C. 235, 249, 237 S.E.2d 246, 255 (1977); *In re Edens*, 290 N.C. 299, 306, 226 S.E.2d 5, 9-10 (1976); *Raper v. Berrier*, 246 N.C. 193, 195, 97 S.E.2d 782, 784 (1957). In *Raper*, our Supreme Court stated:

> [T]he tradition of our courts is that their hearings shall be open. The Constitution of North Carolina so provides, Article I, Section 35 [now Section 18]. The public, and especially the parties are entitled to see and hear what goes on in the courts. . . . That courts are open is one of the sources of their greatest strength.

*Raper*, 246 N.C. at 195, 97 S.E.2d at 784. We note that *Raper* was decided prior to the adoption of the 1971 Constitution which kept intact the 1868 open courts provision (changing some punctuation marks, rephrasing one word and adding "shall be" to the final clause). *Compare* N.C. Const. art. I, § 18 *with* N.C. Const. art. I, § 35 (1868). "Constitutional conventions that readopt provisions in earlier constitutions without change are presumed to have confirmed and acquiesced in the prior judicial interpretations of the provision." Koch, *supra*, at 347 (citing *Warner v. State*, 81 Tenn. 52, 67-68 (1884) and *State v. Schlier*, 50 Tenn. (3 Heisk.) 281, 283 (1871)). Since *Raper* emphasized the public's right to see and hear what goes on in court, we presume the drafters, General Assembly members, and voters who approved the 1971 Constitution confirmed and acquiesced in our

Supreme Court's interpretation of our open courts provision in *Raper*.

However, in applying Article I, § 18, our Supreme Court has recognized limitations on the public's right to be present in court. In *Burney*, the Court held Article I, § 18 was not violated when, during the testimony of a seven-year-old child rape victim, a trial court excluded all persons except the defendant and his family and attorney, defense witnesses, the district attorney, the state's witnesses, officers of the court, the jury, and members of the child's family. *See Burney*, 302 N.C. at 533-38, 276 S.E.2d at 696-98. Similarly, in *Raper*, although holding a petitioner's rights were violated when a judge conferred with petitioner's daughter in private in a custody hearing, the Court observed that a judge could confer privately with a child in this manner with the consent of the parties. *Raper*, 246 N.C. at 195, 97 S.E.2d at 783-84.

[5] Based on this history, the language of the constitutional text, our appellate courts' consideration of this provision, and other state courts' interpretation of similar provisions, we hold that the open courts provision of our state constitution provides the public, including Knight, a constitutional right of access to the civil court proceedings at issue here, including the videotapes, tapes, and transcripts of these proceedings, and to those portions of the court records sealed by the trial court in the orders on appeal.

We must therefore give initial definition to this right of access. Our state constitution open courts provision has three distinct clauses containing separate but related protections. *See* N.C. Const. art. I, § 18; *Cf. E. W. Scripps Co.*, 125 N.E.2d at 905 (Hurd, J. concurring) (discussing separate nature of clauses in identical open courts provision in Ohio Constitution). The open courts provision employs the word "shall" in the pronouncement that "[a]ll courts *shall* be open." N.C. Const. art. I, § 18 (emphasis added). "As used in statutes, contracts, or the like [the word "shall"] is generally imperative or mandatory." Black's Law Dictionary 1375 (6th ed. 1990); *see also State v. Johnson*, 298 N.C. 355, 361, 259 S.E.2d 752, 757 (1979) (applying this definition to statutes). The framers' use of the imperative word "shall" places constitutional limits on a court's discretion in exercising control of its proceedings and creates a strong presumption that court proceedings be open to the litigants and to the public. Of course, as with the federal guarantee, we hold that this presumption is not absolute as our Supreme Court has made clear in its previous

consideration of this provision. There are some circumstances when a court may close proceedings and seal court records. However, the occasion for closing presumptively open proceedings and sealing court records should be exceedingly rare.

[6] In deciding whether to close court proceedings or seal court records, a court must balance the competing interests and policies at stake in light of the particular circumstances of the case but must give substantial weight to the presumption of open access. A court must keep in mind the nature of the protection provided by the open courts provision, including protection of the court's own integrity as an institution. This integrity is always at stake whenever court proceedings and records are closed to the public. Only when justice is administered openly in public view can the public be sure the courts are functioning impartially and independently of other influences.

A court should also keep in mind the relationship the open courts clause has to the interests protected in the other clauses of Article I, § 18, the right to remedy by due course of law and the right to have justice administered without favor, denial, or delay. Read in connection with these clauses, the open courts clause provides significant court access rights to litigants. There may be other public policies and competing interests at stake in a given case. After evaluating the competing policies and interests, a court should then determine whether any of these are so compelling that they overwhelmingly outweigh the strong presumption that court proceedings and records should be open to the public. Furthermore, if a court determines that closure of proceedings or sealing of records is needed, the closure or sealing order should be exceedingly narrow in scope so as to remove only those materials from public purview as is necessary to preserve the protected competing policies or interests.

[7] It is our task to apply these principles to the present case. We acknowledge the public policy interest in the confidentiality of medical peer review committee records and materials even when presented in the context of a civil action. However, this interest is counterbalanced by the public's interest in being fully informed regarding Dr. Virmani's challenge to defendant's assessment of his competency and suspension of his medical staff privileges. These interests are in tension with each other. However, when the strong presumption of open access to traditionally open court proceedings is added to the scales, the balance tips substantially towards retention of the open character of these proceedings.

In addition, we observe that the peer review materials were introduced *by defendant* for the trial court's consideration regarding pretrial motions in this action. In this context, public access to these court materials does not significantly impede defendant's rights of access to court. Defendant was not compelled to present the peer review materials for the trial court's review. It did so of its own volition. By injecting these peer review materials in the public forum of the superior court, defendant subjected the materials to public scrutiny. A party cannot obtain public vindication of its interests in the public forum of our courts without acceding to the public character of this process. We hold the trial court orders closing the court proceedings and sealing the court records in this action constitute reversible error.

Knight also contends the trial court orders violated its rights under the First Amendment of the United States Constitution. Since we have decided that Article I, § 18 of the North Carolina Constitution gives Knight a constitutional right of access at least equivalent to and possibly greater than any rights of access provided by the First Amendment, we need not address this argument.

## RIGHT TO A HEARING

[8] Given the primary importance of the open courts presumption, we also address Knight's contention that the trial court violated its rights under our state constitution by *summarily* denying Knight's motions to intervene and to open the proceedings by rulings made in open court on 8 May 1996 and entered 10 May 1996. We hold the trial court was in error in denying Knight's motions without holding a hearing and without making findings of fact and conclusions of law.

In *Press-Enterprise II*, the U.S. Supreme Court held that, once a First Amendment right attaches, proceedings "cannot be closed unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " *Press-Enterprise II*, 478 U.S. at 13-14, 92 L. Ed. 2d at 13. In *Stone v. University of Md. Medical System Corp.*, the United States Court of Appeals for the Fourth Circuit addressed a fact situation similar to the case on appeal, albeit under First Amendment analysis. In *Stone*, a federal district court issued a one sentence order sealing nearly the entire record in a civil rights action without a hearing and without stating reasons for the order. *Stone*, 855 F.2d at 180. *The Baltimore Sun* filed a limited purpose

motion to intervene with the Court of Appeals when the plaintiff appealed a summary judgment order. The Court of Appeals granted the motion to intervene and held the district court erred by summarily sealing the record without giving the *Sun* a reasonable opportunity to object to entry of the order and without stating reasons for the order supported by specific findings. *Id.* at 180-81.

Although *Stone* was a civil action, the Court relied on a previous decision, *In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir. 1984), in which the Court held that a court in a criminal proceeding must give the public notice of a request to close a courtroom and to seal records and a reasonable opportunity to challenge the closure and sealing. *Knight*, 743 F.2d at 234-35. In *Knight*, the Court held notice must be given either by docketing the request reasonably in advance of disposition or by notifying persons present in the courtroom of the request and giving them opportunity to object and submit their views prior to closure. *Id.*

Since we have held the protection afforded by the North Carolina Constitution is at least as great as that afforded by the First Amendment, we hold Knight was entitled to the opportunity to be heard and to entry of an order containing adequate supportive findings like those stressed in the *Press-Enterprise* cases, *Stone*, and *Knight*. Thus, we hold the trial court was required, under Article I, § 18 of the North Carolina Constitution: (1) to furnish Knight a meaningful opportunity to be heard on its motion; and (2) to state reasons for its ruling supported by specific findings. Here, since Hechinger was present in the courtroom on 7 May 1996 when the trial court summarily closed the courtroom, he and Knight were entitled to a meaningful opportunity to challenge the closure. This opportunity was effectively denied by the trial court's summary disposition.

## RIGHT TO INTERVENE

[9] Presbyterian contends, however, that Knight's motion to intervene was properly denied because Knight did not comply with the procedural requirements for intervention of right under N.C.R. Civ. P. 24(a) or permissive intervention under N.C.R. Civ. P. 24(b). Without deciding whether Knight is entitled to intervention of right under N.C.R. Civ. P. 24(a), we hold permissive intervention under N.C.R. Civ. P. 24(b) is one method available to Knight for the limited purpose of challenging the orders closing the proceedings and sealing the records in this action.

With only minor exceptions, N.C.R. Civ. P. 24 and Rule 24 of the Federal Rules of Civil Procedure are substantially the same. *Ellis v. Ellis*, 38 N.C. App. 81, 84, 247 S.E.2d 274, 277 (1978). Given this similarity, the holdings of the federal circuit courts are instructive. Several federal circuit courts have held that Federal Rule 24(b) permissive intervention may be used by non-parties for the limited purpose of challenging protective or confidentiality orders entered in an action. *E.g.*, *Pansy v. Borough of Stroudsburg v. Ottaway Newspapers*, 23 F.3d 772, 778 (3rd Cir. 1994); *Beckman Industries Inc. v. International Ins. Co.*, 966 F.2d 470, 473-75 (9th Cir.), *cert. denied*, 506 U.S. 868, 121 L. Ed. 2d 140 (1992); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990), *cert. denied*, 498 U.S. 1073, 112 L. Ed. 2d 860 (1991); *Meyer Goldberg, Inc. of Lorain v. Fisher Foods*, 823 F.2d 159, 161-64 (6th Cir. 1987); *Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 294 (2nd Cir. 1979). Other federal circuit courts have held similarly without specifying whether such intervention is permissive or intervention of right. *E.g.*, *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896 (7th Cir. 1994); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783-87 (1st Cir. 1988), *cert. denied*, 488 U.S. 1030, 102 L. Ed. 2d 970 (1989); *In re Beef Industry Antitrust Litigation*, 589 F.2d 786, 788-89 (5th Cir. 1979).

Presbyterian contends Knight may not intervene under N.C.R. Civ. P. 24(b) because it has not asserted a claim or defense having a question of law or fact in common with the main action. We disagree. In addressing a similar assertion, the Third Circuit Court of Appeals held: "By virtue of the fact that the Newspapers challenge the validity of the Order of Confidentiality entered in the main action, they meet the requirement of Fed.R.Civ.P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action." *Pansy*, 23 F.3d at 778. Here, Knight challenges the validity of orders closing court and sealing the medical peer review materials in the main action in response to Presbyterian's motions. For a limited purpose intervention such as this one, this nexus between Knight's contentions and the motions to close court and to seal records in the main action satisfies the N.C.R. Civ. P. 24(b) requirement of a common question of law or fact.

All of the orders before us on appeal are hereby reversed. This matter is remanded with direction that the trial court unseal all documents previously sealed pursuant to the orders hereby reversed. As part of further proceedings in the trial court regarding unsealing of

these materials, the trial court may in its discretion order that names and identifying characteristics of non-witness patients be redacted and that confidentiality of communications between physicians and non-witness patients be protected as permitted by law, including consideration of N.C. Gen. Stat. § 131E-97 and N.C. Gen. Stat. § 8-53.

Reversed and remanded.

Judges EAGLES and SMITH concur.