McGEE, Chief Judge.
Johnathan Ray Weaver ("Defendant") was charged on 24 September 2012 with statutory sex offense with a thirteen, fourteen, or fifteen-year-old and taking indecent liberties with a minor. These charges concerned J.L., who was fourteen years old when the offenses were allegedly committed. This case went to trial on 29 June 2015, and the State moved to exclude bystanders, solely during the testimony of J.L., who was seventeen at the time of the trial. Defendant objected to the motion to exclude bystanders. The trial court rendered its ruling from the bench, retaining its authority to change the ruling if needed:
The [c]ourt determines that-I've considered the presumption, the strong presumption in favor of openness and the right to have an open courtroom and the overall interest of justice and fair administration of justice. I determine that, as I've indicated, there will be no closure of the courtroom but all bystanders, persons not directly related to the case will be asked to leave the courtroom during that period of time subject again to specific modification upon specific requests by [D]efendant or otherwise by the [c]ourt.
The issue was not revisited, and several people who were not directly involved in the case, including Defendant's mother and J.L.'s parents, were removed from the courtroom during J.L.'s testimony. No one was excluded from the proceedings at any other time. Defendant was found guilty of both charges on 30 June 2015. Defendant filed a motion for appropriate relief ("MAR"), pursuant to N.C. Gen. Stat. § 15A-1414, on 9 July 2015. In that motion, Defendant argued, inter alia , that the trial court erred in excluding his mother from the courtroom during J.L.'s testimony. The trial court denied Defendant's MAR by order entered 4 November 2015. Defendant appeals.
Defendant's sole argument is that the trial court violated his "Sixth Amendment right to a public trial" by "clos[ing] the courtroom during the testimony of the complainant without sufficient findings to show that she would suffer any injury if the courtroom were not closed and without considering reasonable alternatives[.]" We disagree.
This Court has articulated the standards to be followed when reviewing a trial court's decision to exclude persons from the courtroom during a criminal trial as follows:
"In reviewing a trial judge's findings of fact, we are 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.' " This court reviews alleged constitutional violations de novo .
"[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." In accordance with this principle, N.C. Gen. Stat. § 15-166 (2013) permits the exclusion of certain persons from the courtroom in cases involving rape and other sexually-based offenses:
In the trial of cases for rape or sex offense or attempt to commit rape or attempt to commit a sex offense, the trial judge may, during the taking of the testimony of the prosecutrix, exclude from the courtroom all persons except the officers of the court, the defendant and those engaged in the trial of the case.
However, when deciding whether closure of the courtroom during a trial is appropriate, a trial court must: (1) determine whether the party seeking the closure has advanced "an overriding interest that is likely to be prejudiced" if the courtroom is not closed; (2) ensure that the closure is "no broader than necessary to protect that interest"; (3) "consider reasonable alternatives to closing the proceeding"; and (4) "make findings adequate to support the closure." The findings regarding the closure must be "specific enough that a reviewing court can determine whether the closure order was properly entered." In making its findings, "[t]he trial court's own observations can serve as the basis of a finding of fact as to facts which are readily ascertainable by the trial court's observations of its own courtroom."
State v. Spence , 237 N.C. App. 367, 371-72, 764 S.E.2d 670, 675 (2014) (citations omitted).
The trial court made the following findings from the bench immediately following the hearing on the State's motion:
THE COURT: I will reserve the right to make a final ruling or to alter or modify these rulings dependent upon the information that may be presented during a forecast either through jury selection or opening statement, or as may be presented by evidence of any witness. However, at this juncture and subject to being modified, the objection is overruled. State's motion to-is granted for a limited purpose and limited period of time for-during the testimony of the alleged victim and only during that period of time. The bystanders will be excluded subject to other modification or subject to specific requests from defense counsel at that time. The [c]ourt determines that-I've considered the presumption, the strong presumption in favor of openness and the right to have an open courtroom and the overall interest of justice and fair administration of justice. I determine that, as I've indicated, there will be no closure of the courtroom but all bystanders, persons not directly related to the case will be asked to leave the courtroom during that period of time subject again to specific modification upon specific requests by [D]efendant or otherwise by the [c]ourt.
[The c]ourt determines that the alleged victim is a young girl who has not yet turned age eighteen[.]
....
THE COURT: And the testimony is going to be involving matters of personal and delicate sexual nature. It may involve testimony of a graphic sexual nature thereby making it uncomfortable for the witness to discuss these matters openly. [The c]ourt determines there is a delicate nature of the relationship between [D]efendant and his wife and the alleged victim. That will be explored during the testimony in this matter. The forecast at this point from the State, there is forecast of a particularly mental and emotional state of [J.L.] due to the circumstances of the alleged crime. The [c]ourt has received no information of any great amount of public interest or any spectators who have requested to be present or of any special requests for media, and the [c]ourt will consider those at the appropriate time if and when presented. [D]efendant's wife, who is subpoenaed to testify, is subpoenaed to testify on behalf of the State and upon the forecast presented by the State the [c]ourt concludes there will be testimony of a special relationship of trust or-of-that of a big sister of defendant's wife and therefore a brother on the part of [D]efendant.
[The c]ourt concludes that a chilling effect on completeness, openness of [J.L.]'s testimony is likely to occur if she feels overly intimidated, embarrassed or emotional by the presence of unnecessary persons and spectators during the course of her testimony.
The [c]ourt has considered and made request from both parties as to any proposed alternatives, including use of closed circuit TV or other testimony wherein the alleged victim would not be physically present in front of unnecessary persons. [The c]ourt concludes there are no reasonable alternatives to limited access to the courtroom during [J.L.]'s testimony. Again is subject to modification upon presentation of the context and witness's testimony. That will be the preliminary order at this time. Reserve the right to make complete plenary findings of fact and conclusions of law.
Following his conviction, Defendant made a motion for appropriate relief, arguing that the trial court had erred in excluding Defendant's mother from the courtroom during J.L.'s testimony. In response to Defendant's MAR, which was denied, the trial court made the following additional relevant findings of fact concerning the limitation of access to the courtroom during J.L.'s testimony:
(3) [D]efendant objected to the closure asserting only the bare allegation of constitutional right. The State proceeded to make assertions of all bases factual and legal for the exclusion of persons during [J.L.'s] testimony only. The State specifically included in its request for exclusion, [J.L.'s] mother and father. [J.L.] was 17 years of age and would be testifying about sexual events that occurred between herself and [D]efendant. There was no one else in the [c]ourt other than [D]efendant who could testify as to the occurrences between [D]efendant and [J.L.]. The indictments which were reviewed by the [c]ourt prior to the motion, charged [D]efendant with Statutory Sex Offense and Indecent Liberties with a minor. The State asserted, without challenge by [D]efendant, that [J.L.] and [D]efendant had a familial type relationship in that [J.L.] considered the Defendant's wife her (sister). [D]efendant was married to a person who lived across the street [from J.L.]. [J.L.] had spent substantial time at [D]efendant's house and in [D]efendant's presence. Subsequently [J.L.] testified that [D]efendant was like a brother to her. The State asserted that due to the relationship between [D]efendant and [J.L.], the nature of the testimony, the age of [J.L.], and her emotional state[,] there would be a significant chilling effect on the testimony if she was to testify in open [c]ourt including in [the] presence of her parents. The [c]ourt made preliminary findings, and announced its intended decision that specifically provided that the order would be subject to modification or any other request made by [D]efendant. The [c]ourt repeated this advisement of opportunity for [D]efendant to make further objection or request any specific relief. The [c]ourt specifically inquired of [D]efendant's counsel of any possible alternatives to exclusion of witnesses and [D]efendant's counsel indicated that he was aware of none. At such hearing Defendant's counsel offered no assertions much less evidence of any specific prejudice to be obtained by exclusion of any bystanders and relied only upon the bare assertion of Constitutional right. After the completion of [J.L.'s] testimony [D]efendant's mother was not present in [c]ourt for substantial periods of time and during the testimony of other witnesses wherein she would have been permitted to be present.
(4) [J.L.] became tearful and crying at the very beginning of her examination and appeared to be emotional and crying throughout the cross examination.
(5) At one point upon vigorous cross examination wherein the Defendant's counsel asserted that she was not telling the truth, [J.L.] became upset and crying where upon the State requested a recess which was granted by the [c]ourt. Thereafter [J.L.] proceeded with cross examination. At no time during the examination or cross examination was defense counsel admonished by the trial court. On the contrary at the beginning of the examination defense counsel asserted that [D]efendant was unable to see and was allowed by the [c]ourt to reposition and move his position in the [c]ourt room so as to be able to see. There after there were no other request for or regarding this examination of [J.L.].
(6) The [c]ourt overruled State's objections and allowed vigorous cross examination including statements by defense counsel that [J.L.] had lied or was making it up.
(7) The [c]ourt allowed defendant great latitude in examining [J.L.] even into what would otherwise be seemingly irrelevant issues only upon [D]efendant's counsel assertion that he would get to a relevant point. Subsequently, in the cross examination of [D]efendant's own wife Amber Weaver, defense counsel began to instruct the witness. This witness Amber Weaver responded to defense counsel that she was trying not to look at [D]efendant her husband. "The [c]ourt instructed defense counsel only that the [c]ourt will instruct the witnesses".
(8) Defense counsel's assertions in its motion that the [c]ourt admonished the counsel during the cross examination of [J.L.] is simply factually incorrect.
(9) During the entire proceedings the [c]ourt had the opportunity and was in the position to observe the testimony of all witnesses including that of [J.L.].
(10) At no time even upon subsequent filings has defense counsel filed any affidavits or forecast of evidence of how defendant's mother would have assisted in any way during his trial.
(11) [D]efendant was approximately 30 years of age and was represented by an experienced and competent trial counsel who also served as the former District Attorney for the First Judicial District having tried many felony trials. Defendant made no request for breaks or opportunities to discuss any matters with [D]efendant's mother or any other person.
Our Supreme Court, in State v. Burney , 302 N.C. 529, 276 S.E.2d 693 (1981), has recognized protection of victims of alleged sexual assault as a legitimate overriding State interest that can support closure of some trial proceedings.
Obviously, rape and other sexual offense cases involve matters of the most sensitive and personal nature. These considerations are compounded when a child of tender years is involved and is called upon to testify in strange surroundings before unknown persons as to matters the child may not fully understand. This [C]ourt has historically recognized the delicate sensitivities which are inherent in prosecutions of sexual offenses. It is this delicacy, as well as the age of the child, which makes out a showing of an overriding interest to justify closure. Third, unlike Richmond Newspapers , the present case did not involve a closure of all trial proceedings. It involved the closing of the courtroom for only a limited period of time. In summary, Richmond Newspapers does not serve to support [D]efendant's demand that he be awarded a new trial because a trial judge in the interest of the fair administration of justice may impose reasonable limitations upon the access of the public and the press to a criminal trial.
Id . at 538, 276 S.E.2d at 698 (citations omitted). In Spence , this Court held that the reasoning below was both supported by the facts and sufficient to support the first factor: "whether the party seeking the closure has advanced 'an overriding interest that is likely to be prejudiced' if the courtroom is not closed[.]" Spence , 237 N.C. App. at 372, 764 S.E.2d at 675 (citation omitted).
THE COURT: Outside the presence of the jury, in my discretion I determined that it would be in the best interest of justice to exclude all bystanders from this courtroom while Ms. Spence continues with her testimony. I have no complaint about the way that the bystanders are conducting themselves. It's simply that there are approximately, I would say, thirty adults, many of whom are friends or family members, who appeared at this trial that are obviously-have an interest in these proceedings in the gallery. I've also observed that Ms. Spence is nervous and upset as she testifies and as essentially may be expected. In any event, in my discretion and in my judgment simply allowing this courtroom to be as free from distractions as possible would be in the best interest of justice, so what I've done is simply required that all bystanders remain outside for the remainder of this witness's direct testimony. I'll revisit this after we take our lunch recess and I'll revisit it at the close of the direct testimony of this witness, but that would be my order at this time.
Id . at 373, 764 S.E.2d at 675-76.
In the present case, the trial court found the following: that J.L.'s testimony would likely contain graphic sexual content concerning acts allegedly perpetrated upon her when she was fourteen years old; that she was only seventeen years old at the time of trial; that she had a "sister-like" relationship with Defendant's wife and something akin to a "big brother/little sister" relationship with Defendant; that she did not want her parents to be present for her testimony; and that additional people in the courtroom would likely have "a chilling effect on [the] completeness [and] openness of [J.L.'s] testimony ... if she feels overly intimidated, embarrassed or emotional by the presence of unnecessary persons and spectators during the course of her testimony." The trial court personally observed that J.L. "appeared to be emotional and crying throughout the cross examination." We hold that the trial court's findings in this regard were supported by the evidence, and in turn supported its conclusion that the State had "advanced 'an overriding interest that [wa]s likely to be prejudiced' if the courtroom [wa]s not closed [.]" Spence , 237 N.C. App. at 372, 764 S.E.2d at 675 (citation omitted).
Concerning the remaining factors: ensuring that any closure is "no broader than necessary to protect that interest[;]" "consider[ing] reasonable alternatives to closing the proceeding[;]" and "mak[ing] findings adequate to support the closure[,]" Id. at 372, 764 S.E.2d at 675 (citation omitted), the trial court in the present case found the following:
[The] State's motion to-is granted for a limited purpose and limited period of time for-during the testimony of the alleged victim and only during that period of time. The bystanders will be excluded subject to other modification or subject to specific requests from defense counsel at that time. The [c]ourt determines that-I've considered the presumption, the strong presumption in favor of openness and the right to have an open courtroom and the overall interest of justice and fair administration of justice. I determine that, as I've indicated, there will be no closure of the courtroom but all bystanders, persons not directly related to the case will be asked to leave the courtroom during that period of time subject again to specific modification upon specific requests by [D]efendant or otherwise by the [c]ourt.
....
The [c]ourt has received no information of any great amount of public interest or any spectators who have requested to be present or of any special requests for media, and the [c]ourt will consider those at the appropriate time if and when presented.
....
The [c]ourt has considered and made request from both parties as to any proposed alternatives, including use of closed circuit TV or other testimony wherein the alleged victim would not be physically present in front of unnecessary persons. [The c]ourt concludes there are no reasonable alternatives to limited access to the courtroom during [J.L.]'s testimony.
We hold that these findings are supported by the evidence, and are sufficient to support the trial court's conclusion that the remaining three factors had been satisfied. We affirm the rulings of the trial court.
AFFIRMED.
Report per Rule 30(e).
Judges DIETZ and TYSON concur.